PEARSON ET AL. v. THE INTERNATIONAL DISTILLERY ET AL.

2. **Intoxicating Liquors:** MANUFACTURE FOR EXPORT FORBIDDEN: CODE, TIT. 11, CHAP. 6: CONTEMPORANEOUS INTERPRETATION: CONSTITUTIONALITY: POLICE POWER. Under chapter 6, title 11, of the Code, *held* that it is unlawful to manufacture, in the state of Iowa, intoxicating liquors (alcohol in this case) for transportation and sale beyond the state, without regard to the purpose of its use; or, in other words, that exportation out of the state is not one of the purposes for which such liquors may be lawfully manufactured within the state; (*Niles v. Fries*, 35 Iowa, 41, and *Becker v. Betten*, 39 Id., 668, distinguished;) that such interpretation of the statute is not discordant with the contemporaneous interpretation placed upon it by the people and legislators of the state; and that the statute, so construed, only gives effect to the police powers of the state, and is not in conflict with the constitutional right of the congress of the United States to regulate commerce among the States. [SEEVERS and REED, JJ., *dissenting.*]

2. **Statutes:** REPEAL: NON-USER. The courts cannot regard a statute as being repealed by non-user alone. (*Hill v. Smith*, Morris, 95, distinguished.)

3. **Intoxicating Liquors:** ABATEMENT OF DISTILLERY AS NUISANCE: LESSEE AS DEFENDANT: SALE OF PERSONAL PROPERTY TO PAY COSTS. In an action to abate as a nuisance a distillery engaged in the unlawful manufacture of intoxicating liquors, where the action was prosecuted against the lessee alone, and there was no claimant of the property adverse to the defendant, and no question was raised as to the ownership of the property, and the evidence showed that a nuisance was maintained in the building, and that the machinery and movable property therein were used in violation of the law, *held* that a decree enjoining the further operation of the distillery, and directing the sale of the personal property to satisfy the costs of the action, was warranted by the statute, (see Laws of 1886, chap. 66, § 5,) but that such decree would not be binding on the lessor, he not being a party to the action.

4. ——: ——: PERMIT FROM SUPERVISORS AS DEFENSE. A permit to a distiller to manufacture intoxicating liquors for lawful purposes is no

defense to an action to close the distillery as a nuisance on the ground that it is manufacturing such liquors for unlawful purposes. The violation of the law is a forfeiture of the permit.

*Appeal from Polk District Court*—HON. W. F. CONRAD, *Judge.*

SATURDAY, SEPTEMBER 10, 1887.

ACTION to declare a distillery a nuisance, and to enjoin the manufacture, the selling, and keeping for sale therein, of all intoxicating liquors. A decree in accord with the prayer of the petition was rendered against defendant Kidd, after a trial on the merits. He appeals to this court.

*Lehmann & Park, C. C. Nourse* and *George G. Wright*, for appellant.

*L. Todhunter, Runnells & Walker* and *Cole, McVey & Clark*, for appellees.

BECK, J.—I. The petition describes the lots upon which the distillery named in the petition is situated, and alleges that it was erected and is used for the manufacture of intoxicating liquors for unlawful purposes, and that defendant now is engaged in the unlawful sale of such liquors in the premises described. It is alleged that "the defendants manufacture, keep for sale, and sell, within this state, and at the place aforesaid, intoxicating liquors, to be taken out of the state, and there used as a beverage, and for other purposes than for medicinal, mechanical, sacramental and culinary purposes, contrary to the statute of Iowa." Before answer, the plaintiffs dismissed their action as against the International Distillery. Kidd answers the petition, denying all of its allegations. He also alleges that he is "authorized by the board of supervisors to manufacture and sell intoxicating liquors," except as prohibited by law, and that he has in the manufacture and sale of liquors complied with all requirements of the law.

There is no controversy as to the material facts of the case, which are, substantially, as follows: The defendant, during the time he has been engaged in operating the distillery, has held a permit from the board of supervisors, regularly issued, authorizing him to manufacture and sell intoxicating liquors for mechanical, medicinal, culinary and sacramental purposes only, as prescribed by law. All liquors manufactured by defendant were disposed of in this manner: His agent would contract sales in New York and other cities outside of this state, and upon his order defendant shipped the liquor to the purchaser, at the same time forwarding a draft attached to the bill of lading, upon payment of which the liquors were delivered to the purchaser. The monthly reports made by defendant, in compliance with the requirements of the law, show that the purposes of all sales made by him were for exportation outside of the state of Iowa. These reports also contain this language: " No liquors of any kind sold to any person in the state of Iowa." It will be discovered that the showing is not entirely clear as to the place of sale. It is declared in the reports that the sales were "for exportation out of the state of Iowa." It is again said that no liquors of any kind were sold in the state. It is probable that the defendant means to say in his report that the sales were made to persons outside of the state, for the purpose of exportation from the state by the purchasers. It is clear that the purpose of the sales, as shown by his reports, was " exportation outside of the state of Iowa." It is perhaps of but little importance whether the sales were made in the state or out, or whether the purpose was for the defendant or the purchaser to export the liquors out of the state. It is very plain that the reports, as well as other evidence in the case, show that the sales made by the defendant were " all for exportation outside of the state of Iowa," and that it is not shown in any way that the liquors were sold for mechanical, medicinal, culinary and sacramental purposes, as authorized by law.

II. The sole question presented by the case is this: Under our statute, may intoxicating liquor be manufactured in this state for transportation and sale beyond its borders, without regard to the purpose of its use? Or, in other words, is the *exportation* out of the state a purpose for which intoxicating liquors may be lawfully manufactured and sold? Counsel for defendants maintain that the statute of this state authorizes the manufacture and sale of intoxicating liquors for exportation (transportation) out of the state, without any restriction as to their use. This counsel for plaintiffs deny. The issue thus presented requires the interpretation of the statute of the state, (Code, *c.* 6, tit. 11,) prohibiting the manufacture and sale of intoxicating liquors. Its consideration demands a careful statement of its provisions. Section 1523 declares that "no person shall manufacture or sell   *   *   * any intoxicating liquors, except as hereinafter provided. And the keeping of intoxicating liquor with the intent, on the part of the owner thereof, or any person acting under his authority, or by his permission, to sell the same, within this state, contrary to the provisions of this chapter, is hereby prohibited, and the intoxicating liquor so kept, together with the vessels in which it is contained, is declared a nuisance, and shall be forfeited and dealt with as hereinafter provided." It will be observed that this section prohibits the manufacture and sale of intoxicating liquors except as permitted or authorized by the statute. The exception contemplated will be hereafter referred to. The second sentence of the section forbids the keeping of intoxicating liquors *for sale within the state* contrary to the prohibition of the statute. It does not forbid the keeping of liquors not intended to be so sold.

Section 1524 excepts from the operation of the statute sales "by the importer thereof of foreign intoxicating liquors imported under the authority of the laws of the United States," and remaining in the original casks or packages in

*Margin note: 1. INTOXICATING liquors: manufacture for export forbidden: code, chap. 6, tit. 11: contemporaneous interpretation: constitutionality: police power.*

which it was imported and sold therein. This section excepts also from the operation of the statute the manufacture of liquor in the state for mechanical, medicinal, culinary and sacramental purposes. Section 1525 provides penalties for the unlawful manufacture of intoxicating liquors, and section 1543 declares the premises in which intoxicating liquor is unlawfully manufactured or sold to be a nuisance, which shall be abated as the law provides. Section 1542 declares that "no person shall own or keep, or be in any way concerned, engaged or employed in owning or keeping, any intoxicating liquors, with intent to sell the same within this state, or to permit the same to be sold therein, in violation of the provisions hereof." The section also prescribes penalties for the violation of its provisions.

Section 1526 is in the following language : " Any citizen of the state, except hotel-keepers, keepers of saloons, eating-houses, grocery keepers and confectioners, is hereby permitted, within the county of his residence to [ manufacture or ] buy and sell intoxicating liquors for mechanical, medicinal, culinary and sacramental purposes only : provided he shall first obtain permission from the board of supervisors of the county in which such business is conducted."

Sections 1527–1538 prescribe the proceedings for procuring the permission provided for in section 1526, the duty of the person holding it, the cause and proceedings for revoking it, and other matters which need not be further referred to in this connection. Some of these sections, as well as section 1526, were amended by chapter 143, Acts Twentieth General Assembly, so that manufacturers of intoxicating liquors to be used for lawful purposes are required to procure permits from the board of supervisors.

We may here observe, and we shall have no occasion to again express the thought, that the amendments to the original statute made by the act just referred to cut no figure in the decision of the question before us. Under the original statute, the manufacturer was not required to obtain a permit;

Pearson et al. v. The International Distillery et al.

under this statute, or amended statute, he is. But before the amendment, as well as after, he could only manufacture for the lawful purposes prescribed by the statute. So, in either case, if he manufactured liquor for other purposes, he was subject to the penalties prescribed, and his premises were a nuisance, subject to abatement under the statute.

It will be seen upon the careful consideration of the statute that intoxicating liquor may be manufactured and sold within the state, to be used for mechanical, medicinal, culinary and sacramental purposes, and for no other. We search in vain for any language in the statute, in which any other purpose is contemplated. Code, § 1524, declares that intoxicating liquors may be manufactured in this state, "for the purpose of being sold, according to the provisions of this chapter, to be used for mechanical, medicinal, culinary or sacramental purposes." The evidence shows without dispute that defendant manufactured intoxicating liquor "for exportation outside of the state of Iowa," and pursuant to this purpose it was not sold to any person in the state of Iowa. The manufacture of liquor for exportation or transportation without the state is not excepted from the sweeping prohibition of Code, § 1523. It is therefore unlawful. The question involving the interpretation of the statute now under consideration, so far as it rests upon the language of the enactment, is narrow, and will admit of no prolonged discussion.

Arguments of counsel based upon other elements of interpretation demand the careful consideration which we shall proceed to give them. We will first express the opinion that the thought of counsel, to the effect that intoxicating liquors may be lawfully manufactured under our statute for another or other purposes than the four expressly limited therein, had its birth in the consideration of the language of Code, §§ 1523 and 1542, which forbid, and provide punishment for, the keeping of intoxicating liquor with the intent to sell the same within the state contrary to the statute. Under these sections intoxicating liquor, under some circumstances, may

be kept in this state, with the intent to sell it without the state, for any purpose — for purposes not lawful within the state. So, under our statute, the keeping of intoxicating liquors, under circumstances expressed therein, with intent to sell them without the state, is not unlawful. The provisions to this effect are necessary in order to harmonize with section 1524, which is intended to conform the statute to the doctrine of the United States supreme court, announced in *Brown v. Maryland*, 12 Wheat., 419, and *License Cases*, 5 How., 504, so that the statute should not conflict with the laws and authority of the United States. Hence, section 1524 provides that intoxicating liquors imported under the laws of the United States, while remaining in the original casks or packages, may be lawfully sold by the importer. But the original casks cannot be broken, and the liquor sold in this state at retail, for purposes forbidden by the statute. Thus imported liquor, while in the original packages, may be lawfully sold for transportation beyond the state, without regard to the purposes for which it shall be used. It may be assumed that liquor not imported may be lawfully kept, if there be no intent to sell it unlawfully within the state. This would be so as to liquors intended to be sold for lawful purposes, and as to imported liquors.

It is claimed by counsel for defendant that this court has ruled that intoxicating liquors may be lawfully transported without the state. *Niles v. Fries*, 35 Iowa, 41, and *Becker v. Betten*, 39 Id., 668, are relied upon to support this claim. The question of authority, under the law, to transport from the state intoxicating liquors, was in neither case. A little consideration of the language of the opinion in the first case will disclose the fact that it is in harmony with the views we have just expressed. It conveys the thought that liquor may be held within the state for lawful transportation without, and may be held for lawful sale in the state, which we have just held. The conditions which would make such transportation lawful are not stated, as we have just now done. The argu-

ment did not demand such statement. In the next case the opinion declares, as to liquor manufactured in the state, that "the right of export remains unlimited to the manufacturer and purchaser." If the word "export" was used in the opinion to mean transportation from this state to a sister state, a use which is hardly accurate, the language is not consistent with what we have just said. But the expression occurs *arguendo*, and is not to be regarded as the announcement of a rule of the law. So, if it be assumed that language in conflict with our present views is found in the other case, it was used *arguendo*, and not in expressing the decision of the court. The profession understand the difficulty, indeed, the absolute impossibility, of always expressing decisions in language wholly accurate, and in supporting them by arguments wholly sound. And it is understood that what is inaccurately said in a decision in argument, like *obiter dicta*, is not to be followed. *Monty v. Arneson*, 25 Iowa, 383, and *State v. Harris*, 36 Id., 136, are cited by defendant's counsel in support of their position on this branch of the case. The first holds that intoxicating liquor is the subject of property; and the other that the keeping of such liquor, without intent to violate the law, is not prohibited by the statute. We think neither case supports counsel's position. But let it be admitted that intoxicating liquors, under the provisions of the statute, may be *kept* in the state, for transportation and sale beyond the state; it does not follow that liquor may be *manufactured* in the state to be disposed of in the same way. The statute declares that it may be manufactured for the purpose of sale under the restrictions imposed therein. There is no provision of the statute which, by fair construction, authorizes its manufacture for exportation.

III. Counsel for defendant urge that the construction of the law for which they contend, having been so generally

SAME: con-temporaneous interpretation. acquiesced in by the people, and approved and advocated by the members of the general assembly in legislative proceedings, by business organizations,

and the like, it all amounts to a contemporaneous interpretation which should be followed by this court. The facts upon which counsel base their claim of contemporaneous interpretatation they draw from the public history, as they understand it, in which, however, we do not concur. We understand, even from counsel's argument, that there were conflicting views upon the subject, and that there was not such a general concurrence of the profession, of individuals composing the different departments of the government, and of the people generally, as would give thereto the weight and force of contemporaneous construction. As evidence of this contemporaneous interpretation, counsel state as a fact that, since the enactment of the statute, distilleries have been built in six of the cities of the state, which are named, and no attempt to enforce the statute against any of them was made until this action was brought. It is unfortunately true that in these cities, with the exception of Des Moines, where defendant's distillery is situated, no successful attempt has been made, unless it be recently, to enforce any of the provisions of the prohibitory statute. The violators of the law have been secure from prosecutions, and in some of them, if not in all, have been licensed by the municipal governments. It is a noteworthy fact that counties of the state wherein the prohibitory law is and has been enforced, and the law-abiding and loyal sentiment of the people secures the enforcement of this and all other criminal statutes, are not mentioned by counsel as the places where distilleries have been erected. The inference is warranted that those who build and operate distilleries avoid these counties, and seek the cities, where they may obtain immunity from prosecutions through the spirit of opposition to the law which sets it at defiance. Surely, these considerations strip the facts stated by counsel, and the arguments based thereon, of all force in support of their position, which, in effect, is that the statute is to be interpreted not to forbid the manufacture of liquor for exportation, for the reason that it has been and continues to be violated.

Pearson et al. v. The International Distillery et al.

IV. Counsel contend that the statute is in effect repealed by non-user; that is to say, it has been so long without 2. STATUTES: enforcement that it is obsolete. Surely, it will repeal: non-user. not do to hold that this statute, though not enforced, ceases to have due force of law. There are many criminal statutes of the state which are often violated, under which there have never been prosecutions of which we have heard, though they have been in force for a great many years. It would surely astonish the profession should it be announced that these statutes cease to have the force of law through non-user. We know of no principle which supports such doctrine. *Hill v. Smith*, Morris, 95, is cited in support of counsel's position now under consideration. It was held in that case that an old United States statute was inoperative and repealed by non-user, by the enactment of other irreconcilable statutes, and by the establishment of an opposite legislative policy. It is not said that the statute was repealed by non-user alone, and it cannot be presumed that the court intended to present such a thought. Non-user indicated the purpose of repeal by conflicting statutes, and the recognition of opposite legislative policy. Thus far non-user was an element upon which to base the conclusions that the statute was repealed.

V. Counsel for defendant maintain that, if their interpretation is not correct, then the law is invalid, on the ground SAME as No. that it is in conflict with the exclusive constitu-1: constitutionality: tional right of congress to regulate commerce police power. among the states. Counsel's position, as we understand it, is this: The statute, under the interpretation we adopt, forbids the manufacture of intoxicating liquors for the purpose of transportation and sale out of the state, while its manufacture for lawful purposes is authorized. Its manufacture for permitted purposes being lawful, it is a proper subject of property and of commerce. The statute, in forbidding its transportation, interferes with inter-state commerce, and is a regulation thereof which, under the constitution, is

exclusively within the authority of congress.   We think brief consideration will serve to point out the error of this position.

The statute, as we interpret it, authorizes the manufacture of liquors for permitted purposes, and forbids it for all other purposes. It does not forbid the transportation of liquors out of the state.   See Code, § 1553, and amendment thereto, by chapter 143, Acts 20th General Assembly.   The prohibition of the statute is directed alone to the manufacture of intoxicating liquors for purposes other than for sale according to the provisions of the statute.   (Code, § 1524.)   If the law be obeyed, no liquor will be manufactured for transportation.   Its operation is to prevent the production of an article which might be lawfully transported out of the state.   Now, commerce consists in the interchange of commodities or property which is the subject of trade. It does not consist of the impossible interchange of things not in existence.   There must be articles of trade before commerce can exist.   How, then, can it be said that the statute, by prohibiting the manufacture of an article of trade, regulates commerce?   But, if this view be not correct, and the authority to regulate commerce extends to the regulation of the production of articles of commerce, then the state is deprived of all authority to tax, license, prohibit, or otherwise regulate, the manufacture and the manufacturers of all articles which are intended, when produced, to be the subject of interstate commerce.   One illustration will serve to show the effect of the doctrine to broaden the exclusive authority of congress to regulate commerce.   A manufactory of steam boilers for sale and transportation without the state is established within the residence portion of a city of this state, with dwellings of citizens adjacent thereto.   Now, under the doctrine advanced by counsel, as the purpose of the owner of the manufactory is to produce articles for inter-state commerce, the nuisance cannot be abated under the laws and authority of the state, for the reason that the abatement

would be the enforcement of regulations of commerce, a subject exclusively within the authority of congress. Surely, it will not be contended that the authority of congress reaches to this extent. But it may be urged that the boiler manufactory, according to the conditions of the illustration, is, under the laws of the state, a nuisance — a thing doing injury to the people of the state, by interfering with their comfortable enjoyment of property, and may therefore be abated by the statute. The same things are true of a distillery, which, under the laws of this state, is a nuisance. These thoughts need not be extended. They lead to the conclusion that counsel's position upon this branch of the case is unsound.

VI. It is admitted on all hands that, if the statute in question was enacted in the rightful exercise of the police power of the state, it is valid. It is not important that we should here attempt to define what is called the police power, or inquire into its extent. It is sufficient to say that it is a power which may be exercised by the state to secure, promote and protect the welfare, comfort, peace and good morals of the people of the state. We need not make extended inquiry whether this power may be exercised to bestow like benefits and protection to the people of sister states. It would seem, indeed, that, in view of the intimate relations of the people of the several states, being in fact one people, the subjects of the general government, with common interests for good government and prosperity of all, the state should in its legislation have regard to the peace, prosperity, comfort and good morals of all the citizens of the union. Surely, the state ought not to permit things to be done within its borders which subvert the peace, prosperity and good morals of the people of other states. No one will doubt that it is not only within the authority of the state to suppress conspiracies and combinations within her borders, intended to disturb the peace of a sister state, but that it ought to do so. And surely, even counsel for defendant will not contend that the power of the

state may not be exerted to prevent the impairment of the health or good morals of the people of another state, by the pursuit of business, or by acts done within our own state. Will it be for a moment contended that the state cannot suppress the publication of obscene literature intended to be circulated exclusively in other states? Or may it not prohibit the manufacture, within the state, of unwholesome food, for transportation and sale in other states? Not alone do the true doctrines of constitutional law deny that the power of the state is so restricted,—humanity, patriotism, inter-state comity and Christianity, all unite in protest against it.

VII. But, if it be assumed that the police power of the state may be exercised to secure benefits and protection to the state alone, the prohibition of the statute in question, as we interpret it, finds ample support in the demand for protection of our people from the evils which would flow from the unrestricted manufacture of intoxicating liquors. It is proper to remark here, that this power may not be arbitrarily or capriciously exercised, and never for purposes other than the protection of the people and the suppression of evils threatening the subversion of the peace, comfort and good morals of the people, and their quiet and full enjoyment of property. The evils flowing from intoxicating liquors arise wholly from its use as a beverage. But this use is wide spread, reaching all classes of the people, and both sexes, and every age. No condition of life is wholly exempt therefrom. An enumeration of all the evils arising from the use of intoxicating liquors need not be attempted. They are numerous, and affect the people collectively and individually. Idleness, poverty, pauperism, crime, insanity, disease, and the destruction of human life, follow indulgence in the habit of using intoxicating drinks. Millions of our fellow-countrymen are addicted to this habit, and, of these, millions become drunkards. Homes are broken up, and domestic peace is destroyed by drunkennesss. The prisons, alms-houses, and institutions for the care of orphanage, insanity

and affliction, are largely filled by the vice. These are evils, but not all of the evils, of the alcohol habit, affecting the social condition of the people, and their comfort and good morals. But other evils attending the use of intoxicating beverages affect the state and its government. It is the prolific source of crime, pauperism and insanity, and thereby entails taxation to defray the expenses of the conviction and punishment of criminals, and the support of almshouses, asylums and hospitals. It deteriorates, mentally and physically, the human stock, rendering its victims, as well as their progeny, less capable of bearing arms in defense of their country, and of discharging other duties of the citizen. Soldiers are unfitted for duty by it, and thereby battles have been lost, and the liberty of nations, if not lost, has been imperiled. Tradition perpetuates, if history does not fully record, the evils which have flowed from the alcohol habit of officers and soldiers of our own armies. Washington struggled with difficulties occasioned by it, and other commanders of later days have had a like experience, while patriotic soldiers have suffered on account of inebriety of officers in all branches of the military service. The appetite for strong drink, possessed by so many of our countrymen, demands constant gratification, and the expenditure therefor of enormous sums of money, thus creating a business—the keeping of saloons and dram-shops, in which are employed an immense number of men. Their business, and their relations with the idle and dangerous classes of society, give them great influence in public affairs. The municipal governments of the cities, often burdened with debts, and robbed by unfaithful and mercenary officers, in all departments, give evidence of the direction in which this influence is exerted. Thinking men of this day largely concur in the opinion that the influence of the saloon, and the idleness and vice of the multitude of its clientage, united, constitute the great peril of American institutions. We think none will deny that nothing but evil flows from this source.

That the state possesses the power, in the exercise of its police authority, to strike at the alcohol habit, by regulating or totally suppressing the sale of intoxicating liquors for use as a beverage, is admitted on all hands.    We do not understand that counsel for defendants deny it.    All the courts of the union, federal and state, which have passed upon the question, unite in sustaining this authority.    See, for a citation of these cases, Cooley, Const. Lim., 582, 583, and notes, and the first series and annual volumes of the United States Digest.    The power to prohibit the sale of intoxicating liquors has been exercised by many states, and traffic therein with Indians has been prohibited by statutes of the United States, and of this and other states.    The preservation of order in the Indian tribes, and peace between them and the frontier settlers, the prevention of famine and disease, and the preservation of the very existence of these savages, are the humane objects of these statutes.

The same purpose demands legislation to protect the inebriates among our own countrymen, probably equaling in number all the Indian tribes, from the destructive consequences of the gratification of their appetites for strong drink, which is no less uncontrollable in them than in the Indians.  Surely, humanity and patriotism demand that the same protection be extended to this unfortunate class of citizens of the United States which is secured to the savage wards of our government.

In the exercise of the power to suppress saloons and prohibit the sale of intoxicating liquors as a beverage, the legislature of this state, in the constitutional exercise of its discretion, has forbidden the manufacture of intoxicating liquors, except for sale for mechanical, medicinal, culinary and sacramental purposes, under regulations as prescribed by the statute.    The prohibition of the manufacture is a means to effectuate the prohibition of the sale.    The use of all means to accomplish the end, not forbidden by constitutional restriction, rests in the discretion of the legislative depart-

ment of the state government.    The courts cannot review the exercise of this discretion.

VIII.    But the prohibition of the manufacture of intoxicating liquor may be supported upon the ground that, *per se*, it has a deleterious effect upon good order, and the peace, comfort and morals of the people of the state.    The manufacture of an article so pernicious in its use as a beverage cannot be consistently authorized while its sale is forbidden.

It would be as an effort to stay the flow of a stream when its very source should be destroyed.    The manufacture in the state would offer inducements for the violation of the law prohibiting sales, and would afford opportunities for the creation and gratification of the appetites by, at least, those engaged in and connected with it.    For other reasons, which need not be stated, the legislature esteemed the manufacture to be an evil which ought to be suppressed.

IX.    But counsel insist that alcohol, which was alone manufactured by defendant, is not commonly used as a beverage. The statement may be admitted to be true.    But it is largely so used by people of some nationalities who have become citizens of the United States, and often used by others.    By the simple process of dilution of alcohol, a beverage is made palatable enough to the victims of the appetite for strong drink, which may become the common drink of inebriates.

X.    Counsel argue, as we understand them, that, as the manufacture of alcohol is permitted for sale for lawful purposes within the state, it does, when manufactured for exportation, not a lawful purpose, become property, and then its exportation, a purpose forbidden by the statute, becomes lawful on the ground that the restriction upon its use is an interference with the rights of property.    But, conceding that alcohol, without regard to the purpose of its manufacture, is property, it does not follow that its uses may not be restricted by the state, in the exercise of its police authority.    While the state may not deprive the citizen of his property, it may forbid its use for purposes which are subversive of the peace,

Pearson et al. v. The International Distillery et al.

order and morals of the people, and destructive of health and life. Counsel refer to statutes forbidding the manufacture of oleomargarine and glucose, and express the opinion that they are not in conflict with constitutional provisions upon which they rely to defeat the statute under consideration in this case. We can discover no distinction between the statute under consideration and the statutes referred to by counsel, which are doubtless based on the ground that the articles prohibited are detrimental to health, or their production is in conflict with the interests of the people, and the policy of the state enacting them.

XI. But the use of property may be restricted for purposes connected with trade and other interests of the people. An illustration of legislation of this character is found in our game law, which forbids the transportation out of the state of any game killed within it. Yet the killing of game is permitted, with restrictions as to time and quantity or number killed. The sportsman may lawfully kill the prescribed number within the lawful time. The game becomes his property; yet he cannot transport it out of the state. We have never heard doubts expressed as to its constitutionality. A little consideration will disclose its close similarity to the statute forbidding the transportation of intoxicating liquor.

XII. The defendant insists that, as there is no evidence tending to show that he was the owner of the distillery, and the machinery and movable property connected with its operation, the decree erroneously directs the closing of the distillery, and the sale of the personal property to satisfy the costs of the action. There is no claimant of the property adverse to defendant, and no question is shown to have arisen in the court below involving the ownership of the property. The evidence establishes the fact that a nuisance was maintained in the building, and the personal property was used in the violation of the law. The statute pro-

3. INTOXICATING liquors: abatement of distillery as nuisance: lessee as defendant: sale of personal property to pay costs.

vides that, when a nuisance is established in an action, the personal property used about the premises shall be subject to sale upon the judgment. See Acts 21st General Assembly c. 66, § 5. If defendant owns the property, or it has been used with the consent of the owner for the purpose of the violation of the statute, it is subject to be dealt with as provided by the statute. If it is not so owned, or has not been so used, the owner's rights are not precluded by the decree, and he will be protected in proper proceedings, which he may institute for that purpose. As no prejudice can result to any one from the decree, there is no ground for changing its provision in this regard.

XIII. Defendant further insists that the decree errs in directing the distillery to be closed. The defendant bases this claim upon the ground that he holds a

4. ——: ——: permit from supervisors as defense.

permit to manufacture liquor for lawful purposes, and the decree destroys his rights thereunder. But the court rightly found, under the evidence, that defendant maintained a nuisance by manufacturing liquor contrary to law. His permit is no protection against the penalties provided therefor. Having been found a violator of the law, the court will not presume that he will hereafter obey the law. He makes no claim or promise that he will hereafter conduct the business lawfully. The violation of the law works a forfeiture of his permit. For these reasons the decree correctly directs the closing of the distillery ; at all events, it is in accord with the statute. If defendant is a lessee of the premises, the lessor may obtain possession of the property by complying with the requirements of the statute. (Acts 21st General Assembly, c. 66, § 5.) He suffers no prejudice from the decree.

We have considered all questions arising in the case, and reach the conclusion that the decree of the district court ought to be                    AFFIRMED.

SEEVERS, J., *dissenting*.—I do not understand it to be

claimed in the foregoing opinion that there is any provision of the statute which in words forbids the manufacture of intoxicating liquors for sale out of the state for purposes which would be unlawful if the sale were made in this state. If there is no such provision of the statute, then the right to transport the liquor for sale out of the state necessarily exists.

I do not understand it to be claimed by the majority of the court that there is any distinction between the seller and manufacturer, but that both are placed by the statute on the same footing. It is true, it is stated in the opinion of the majority that " there is no provision of the statute which, by fair construction, authorizes its manufacture for exportation." This, it seems to me, is not a fair statement of the question to be determined, which is whether there is any provision of the statute which, in terms or by fair construction, forbids the transportation of liquors for sale beyond the boundaries of the state. Unless there is such a statute, the right clearly exists, although there may not be an affirmative statute declaring the existence of such right. A statute which simply declares that liquors cannot be manufactured or sold, except for certain specified purposes, is not sufficient, for the reason that it does not, by necessary implication, apply to the manufacture of liquors for sale out of the state. Therefore, it seems to me, the logic of the foregoing opinion is faulty ; especially is this so when the prior decisions of this court are considered. In *Niles v. Fries*, 35 Iowa, 41; it is said by BECK, J., speaking for the court : " Intoxicating liquors in the possession of a citizen who holds them for the purpose of selling them lawfully *within the state*, or for transporting them without the state for lawful traffic, are not, under the statute, subject to seizure. ( Code, § 1525.) To constitute the owning and keeping of intoxicating liquors unlawful, there must exist an intent to sell or dispose of them *within the state*, contrary to law. In the absence of such intent, the possession of this kind of property is lawful.

If lawful, the law must protect the property." This decision was made in 1872, and *Becker v. Betten*, 39 Iowa, 668, was decided two years later, in which COLE, J., speaking for the court, said : "Further than this, the right to *export* remains unlimited to the manufacturer and purchaser." The italics are mine. Such was the construction placed on the statute by this court twelve or more years ago. Six sessions of the general assembly have since then been held, and it must be assumed that the members of the general assembly are conversant with the decisions of this court construing the statutes of the state, and yet no amendment thereto was made, as is conceded by the majority, which changed the statute so as to avoid the construction adopted in the foregoing decisions. During the same period the distillery in question was in daily operation within sight of the capitol; and it was regarded, by at least some of the citizens of the state, as an outrage, and that its existence was unlawful. At least by four of the sessions of the general assembly the prohibitory law was in some respects amended. During such period, hundreds of barrels of alcohol were annually manufactured at the distillery, sold and transported from the state, and yet no attempt was made, I believe, until about the time this proceeding was commenced, to have such manufacture and sale declared unlawful. This fairly shows, I think, a contemporaneous construction of the statute by this court, acquiesced in by the legislature and people, and therefore the language used in the former decisions cannot at this late day be regarded as inaccurate expressions of judicial thought, or that it was mere *dictum*. Besides this, in my opinion, it cannot be fairly said that the language used was not applicable to the question actually determined. It therefore seems to me that the construction of the statute, now for the first time adopted, is an after-thought. It cannot be fairly said that during the period mentioned public sentiment in the county of Polk was opposed to the enforcement of the prohibitory law, whatever may be the fact as to other counties in

the state. In all cases involving the proper construction of a statute which has been in force for several years, the contemporaneous construction thereof by the people, courts and legislature, either by acquiescence or otherwise, is entitled to great consideration, if the terms of the statute make its construction doubtful and uncertain.

In my opinion, the statute was properly construed by this court years ago, and that, as an original proposition, such construction is right. This depends wholly upon the construction that should be given to section 1523 of the Code. This, in substance, is conceded by the majority. The other sections of the Code referred to are mere makeweights, which favor or detract from the construction placed upon section 1523 in the foregoing opinion. Now, what is the scope and object of the statute? The manufacture and sale of intoxicating liquors, except for lawful purposes, is forbidden. But where is the sale forbidden? In this state, of course. Such is the express language of the statute. It will not be claimed, I assume, if a person sells in another state intoxicating liquors, that he can be punished in this state, or that the statutes make such sale unlawful. Mr. Kidd, therefore, when he sold alcohol in New York, or in this state for shipment to and use in that state, did no act which is forbidden by the laws of this state. It will be observed that it is conceded by the majority that it is immaterial whether the sale was made out of this state or within the state for transportation and use out of it. If the sale is not unlawful, how can the manufacture be unlawful, when both by the statute are placed on precisely the same basis, as, I think, must be conceded to be the logical result of the foregoing opinion. In my judgment, the plain and the only meaning of the statute is that the sale in this state, and the manufacture for sale and use in this state, of intoxicating liquors, for unlawful purposes, are alone prohibited, and that the statute does not undertake to say what may be done with the liquor in another state. If it did, a question would be presented as to

the validity of the statute.   Therefore, the right to sell and transport liquor from the state exists simply because it is not prohibited.

In my opinion, the construction of the statute adopted by the majority makes a conflict between it and the constitution of the United States, and therefore the fifth paragraph of the foregoing opinion is unsound.   As long as intoxicating liquors and corn are regarded as property, the right to transport either out of the state exists, although the avowed use of the corn so shipped is the manufacture of such liquors in another state.   I also desire to reserve to myself the right hereafter to determine the extent of the police power inherent in the state.

As an individual I cordially assent to all that is said in the opinion of the majority as to the evils of intemperance, but I have doubts as to its materiality in the determination of this controversy.

The judgment of the district court should be reversed.

REED, J., concurs in this dissent