### PREMIER–PABST SALES CO. et al. v. McNUTT, Governor, et al.

#### No. 1580.

District Court, S. D. Indiana, Indianapolis Division.

Feb. 18, 1935.

Nagel, Kirby, Orrick & Shepley, of St. Louis, Mo., Donnelly, Lynch, Anderson & Lynch, of Cedar Rapids, Iowa, and Miller, Miller & Bredell, of Indianapolis, Ind., for complainants.

Philip Lutz, Jr., Atty. Gen. Indiana, Herbert J. Patrick, Deputy Atty. Gen. Indiana, and Thomas F. O'Mara, of Terre Haute, Ind., for defendants.

Before FITZHENRY, Circuit Judge, and BALTZELL and SLICK, District Judges.

BALTZELL, District Judge.

This is an action in which the plaintiffs are seeking to enjoin the enforcement of an act of the General Assembly of 1933 of the State of Indiana concerning alcoholic beverages (Acts Ind.1933, c. 80) and the regulations promulgated thereunder by the defendant Paul P. Fry, as Excise Director, for the reason that such act and regulations are in contravention of the Constitution and laws of the United States.

The plaintiffs are manufacturers and wholesalers of alcoholic malt beverages and are corporations created and existing under the laws of the States of Delaware, Wisconsin, and Missouri, respectively. Each plaintiff is engaged in the manufacture and wholesale of alcoholic malt beverages, but neither has its principal place of business within the State of Indiana. Each, however, is permitted, under the laws of such state, to have its product sold therein, provided the laws thereof are complied with pertaining to the importation of alcoholic malt beverages into the state. Neither of the plaintiffs thus engaged in the manufacture of alcoholic malt beverages has a brewery or manufacturing establishment within the state.

The defendants Paul V. McNutt and Philip Lutz, Jr., are the duly elected, qualified, and acting Governor and Attorney General, respectively, of the State of Indiana, and the defendant Paul P. Fry is the Excise Director of such state, having been regularly appointed as such by the Governor, as by law provided.

There was enacted by the General Assembly of the State of Indiana in 1933, at its 78th Session, legislation seeking to regulate the manufacture for sale, bottling, selling, importing, etc., of alcoholic malt beverages. Provisions of the act, in so far as they are pertinent to the consideration of this case, may be found in the footnote herein.* This act became effective on March 1, 1933, and provision is made in section 5 thereof for the appointment by

---

* Acts 1933, c. 80, p. 492.

Sec. 1. "That this act shall be deemed an exercise of the police powers of the state, for the protection of the economic welfare, health, peace and morals of the people of the state, and to prohibit forever the open saloon; and it is declared that all beverages containing alcohol shall be subject to the provisions of this act; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Sec. 3. (a) "The words 'alcoholic beverages,' whenever used in this act, shall be construed to mean all malt, vinous or spirituous beverages containing alcohol, and every other drink, mixture or preparation having any alcoholic content, whether patented or not, reasonably likely, or intended to be used as a beverage, including grain alcohol."

Sec. 5. "There is hereby created a director, to be appointed by the governor, to be known as the excise director, who shall hold office during the pleasure of the governor, for a term of not to exceed four years, except upon reappointment."

Sec. 6. "The excise director shall have and exercise the following functions, duties and powers, to-wit: * * *

the Governor of an Excise Director, the duties of whom are fully set forth in section 6 of the act. Full authority is given the Excise Director, by virtue of section 6, supra, to promulgate regulations for the purpose of carrying out the provisions of the act. The director is also authorized to divide the state into various districts for the purpose of administering the provisions of the act. Section 7. Pursuant to such provisions the state was subsequently divided into ten districts, and an individual or a corporation residing in each district was named by the excise director as an "importer," the number of importers being limited to ten, by virtue of section 8 (a). Each importer was granted a permit by the defendant Fry, as Excise Director, whereby he or it was authorized to import into his or its respective district alcoholic malt beverages manufactured outside the State of Indiana. Each importer is required to, and has paid to the State of Indiana annually the sum of $2,500 for the privilege of acting as such importer, and as such, has the sole and exclusive jurisdiction over the dis-

"(b) Control manufacture, bottling, possession, sale and delivery of alcoholic beverages, in accordance with the provisions of this act.

"(c) Grant, refuse or cancel permits for the manufacture, bottling, possession, sale and delivery of alcoholic beverages in accordance with the provisions of this act; * * *

"(e) Promulgate regulations for the purpose of carrying out the provisions of this act."

Sec. 7. "The director shall divide the state into districts for the purpose of administering this act, which districts shall be numbered and shall conform as nearly as possible, for the proper administration of the act, to the congressional districts."

Sec. 8. "Any person desiring to manufacture for commercial purposes, import, possess for the purpose of sale, bottle for sale, sell or deliver any alcoholic malt beverages shall make application to the director for a permit to do or perform any of such acts, * * * and thereupon the director may, in his discretion, grant any such permit, subject to the following restrictions, to wit:

"(a) The director shall not, in any event, issue more than * * * ten permits to act as importing agent; * * * Provided, further * * * any holder of a permit to act as an agent shall have the exclusive right to import such alcoholic malt beverages into the State of Indiana for the purpose of bottling, possessing, and selling the same under and pursuant to the provisions of this act and of the Constitution and laws of the United States of America; . Provided, however, That all such alcoholic malt beverages so imported shall be subject upon their sale or withdrawal for sale in the State of Indiana from the plant of such agent to the license fee thereon, as hereinafter provided in this act, for such beverages manufactured in this state; * * *

"(b) Before the director shall grant any such permit to manufacture alcoholic malt beverages, or to act as an agent for the purpose of importing alcoholic malt beverages, he shall require the applicant to file his bond in the penal sum of twenty thousand dollars, payable to the State of Indiana, with good and sufficient sureties to be approved by the director, conditioned that so long as he holds such permit unrevoked, he will not violate any of the provisions of any law of this state touching the manufacture, importation or sale of alcoholic beverages, as defined in this act, and that he will account for all license fees levied in this act on the products manufactured and sold or withdrawn for sale by him under such permit. And the director shall also require, upon the issuance of such permit to manufacture, that there be paid as a separate license fee therefor the sum of twenty-five hundred dollars; and to act as an importing agent a separate license fee of the sum of twenty-five hundred dollars and, in order to continue such permit in force, shall require and receive the payment of a like sum on the same day of each year thereafter, so long as such permit shall remain in force. * * *

"(c) The director may grant any such permit to any individual, or to a partnership, all of the members of which are bona fide residents of the State of Indiana, or to a corporation organized and existing under the laws of the State of Indiana, having authority under its charter to manufacture, import and/or sell alcoholic beverages; Provided, however, That at least fifty-one per cent. of the voting stock of such corporation shall, at all times, while such permit remains in force, be owned by persons who are bona fide residents of the State of Indiana; * * *

"(e) Before the director shall grant any such permit to wholesale alcoholic malt beverages, he shall require the applicant to file his bond in the penal sum of five thousand dollars, payable to the State of Indiana, with good and sufficient sureties to be approved by the director, * * * and he shall also require such applicant, upon the issuance of such permit, to pay as a license fee therefor, the sum of one thousand dollars, and a like sum on the

trict for which a permit has been granted, in so far as the importation of alcoholic malt beverages is concerned. Section 8 (b). No other person within the state has authority, or is permitted, to purchase and import into the state alcoholic malt beverages manufactured outside the state. Neither is there any other means whereby a foreign manufacturer or wholesaler of alcoholic malt beverages may dispose of its product to consumers within the state. Provision is made in the act for the licensing of domestic manufacturers of alcoholic malt beverages, and the license fee paid by each manufacturer is the same as that paid by an importer, that is, $2,500 per annum. Section 8 (b). In addition to the importation into the state of the products of the plaintiffs in this action, as well as the products of other breweries located outside the state, there are similar products manufactured by several breweries located and operating within the state. A wholesaler pays a license fee of $1,000 per annum. Section 8 (e).

The plaintiffs, desiring that their product be sold to consumers within the State of Indiana, did, subsequent to the taking effect of the act and to the appointment of the ten importers, each enter into a separate contract with each of such importers whereby their product was to be handled by them. Before the importers would enter into such contracts, a fee of $500 was required to be paid by each plaintiff to each importer in consideration of the execution of such contract. In other words, each plaintiff was required to pay a total sum of $5,000 in order to procure the services of all importers to handle its product, this in addition to any profit that such importers might make upon the sale thereof. Such contracts were in writing and were for a term of one year. Pursuant to the terms of these contracts, the product of each plaintiff was purchased by the various importers f. o. b. its manufacturing plant. The product thus purchased was transported by the importer, who purchased the same, to his place of business within the State of Indiana and disposed of by him in the state. Such contracts were not renewed at their expiration, but arrangements were made by the parties whereby the products of each plaintiff were continued to be handled by each importer, such products being purchased by such importers f. o. b. the manufacturing plant, and are so handled at this time. The products of the plaintiffs so purchased by the various importers are not transported by the plaintiffs in interstate commerce, or, in fact, at all, but all of the transportation is done after they are purchased and become the property of the importer who purchases the same.

The defendant Fry, as Excise Director, promulgated Regulations No. 2 pursuant to authority vested in him by virtue of the act in question under date of April 24, 1933. Such Regulations became effective as of that date and provide in detail for the administration of the various provisions contained in the act. Regulations No. 3 were promulgated by the director under date of December 15, 1933, and are identi-

same day of each year thereafter, so long as the permit shall remain in force."

Sec. 9. "Any such authorized manufacturer, and/or importing agent shall pay unto the State of Indiana a license fee of five cents on each gallon of alcoholic malt beverages manufactured and sold or withdrawn for sale by him in the State of Indiana pursuant to the terms of this act, which license fee shall be paid on the first and fifteenth day of each month on all such beverages so manufactured and sold or withdrawn for sale by him during the preceding half-monthly period. Such license fee is hereby levied, and the same shall be collected by the director, and by him paid to the state treasury; and the director shall have power to prescribe regulations and provide and maintain gaugers in such manufacturer's plant, and/or importing agent's plant, for the proper gauging of such beverages and the assessment of such license fees."

Sec. 10. "Any such authorized manufacturer, and/or importing agent, may sell any such alcoholic malt beverages to any authorized wholesaler and to any authorized dealer in the State of Indiana; and to any consumer authorized to purchase alcoholic malt beverages, under and pursuant to the terms of this act."

Sec. 31. "The provisions of this act shall apply only to any alcoholic beverages the manufacture and/or sale of which is permitted under the laws of the United States of America. Except as provided in this act it shall be unlawful for any person to purchase, receive, manufacture, transport, ship, barter, exchange, give away, furnish, or otherwise handle, or dispose of any alcoholic beverages, or possess the same for purposes of sale. Any person violating any provision of this act, upon conviction, except as otherwise provided in this act, shall be fined not less than ten dollars, and not more than one thousand dollars."

cal in many respects with the Regulations then in effect, but certain changes and additions are to be found therein which, in the judgment of the director, were necessary to meet the requirements of the act. Section 4, Article II, of both Regulations numbered 2 and 3 provides: "Any permit to act as an importing agent pursuant to the terms of said act shall designate the district in which the establishment of the holder thereof shall be located; and the holder of any such permit shall be authorized to bottle, possess and sell alcoholic malt beverages pursuant to said act in the said district but not elsewhere." Regulations No. 3 contains section 6, article II, which was not a part of Regulations No. 2, which section is an interpretation on the part of the director of certain provisions contained in sections 8 and 10 of the act, supra. Such Regulation. provides in part as follows: "Warehouses or storage warehouses may be established and maintained in the county in which the principal office of such * * * importing agent of alcoholic malt beverages is located as shown by such application and license." The director has placed his interpretation upon certain provisions of the act in question wherein it is held by him that such act prohibits the delivery or transportation within the State of Indiana of any alcoholic beverages whatsoever from without the state into or from one point within the state to another point therein when such beverage has been purchased outside the state, unless purchased from a regularly authorized and licensed importer. Regulations No. 3, § 16, art. IX. The Regulations in force at the time of the filing of the bill of complaint in this action and which are in force at this time are Regulations No. 3, which were submitted to and approved by the defendant Paul V. McNutt, as Governor, on the 4th day of December, 1933.

It is the contention of the plaintiffs that the alcoholic beverage act and the Regulations promulgated by the defendant Fry are invalid and in violation of the Constitution and laws of the United States. The portions of the act and of the Regulations especially attacked seek to regulate the importation of alcoholic malt beverages. It is contended that such act constitutes an unlawful and unjust discrimination between these plaintiffs and manufacturers and wholesalers whose residence and place of business is located within the State of Indiana. It is especially urged that such act

contravenes the following provisions of the Constitution and laws of the United States:

First. The Eighteenth Amendment to the Constitution of the United States.

Second. Section 8 of article 1 of the Constitution of the United States (commonly known as the "Commerce Clause").

Third. The Fourteenth Amendment to the Constitution of the United States.

Fourth. Section 2 of article 4 of the Constitution of the United States.

Fifth. Sections 41, 42, and 43 of title 8 U.S.C.A. (commonly known as the "Equal Rights Laws").

Sixth. The National Prohibition Act, tit. 2, § 1 (27 U.S.C.A. § 4) which was in force at the time of the passage of the act in question.

■ The defendants have each separately and severally filed a motion to dismiss the bill. This motion is rather voluminous and seeks the dismissal of the bill upon many grounds. It is first contended that the various provisions of the act have been held to be constitutional by the Supreme Court of the State of Indiana in the case of Fry et al. v. Rosen, 207 Ind. 409, 189 N. E. 375, 379. While it is true that the highest court of the state held in that case that the act is constitutional and does not contravene the Constitution of either the State of Indiana or of the United States, yet such decision is binding upon this court only in so far as the construction of the act is concerned, and its validity under the State Constitution. Such decision is not binding upon this court in so far as it supports the validity of the act under the Constitution and laws of the United States. Des Moines Nat. Bank v. Fairweather, Mayor, et al., 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191. There can be no merit in this contention. The defendants also assert that this is, in reality, a suit against the State of Indiana, and as such, this court has no jurisdiction. This contention cannot be sustained. The defendants are each charged, under the law, with the performance of certain duties, the performance of which leads to the enforcement of the act which the plaintiffs assert is unconstitutional. Under the law, a federal court has jurisdiction to enjoin individuals who are state officers from the enforcement of an unconstitutional statute. There no longer exists any doubt upon this question, because it has been repeatedly so held by the Supreme Court of the United States. See

Scott v. Donald, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764. See, also, Section 266, Judicial Code, as amended (U.S.C.A. title 28, § 380).

▉▉ The defendants present many questions upon their motion to dismiss which really go to the merits of the controversy. The effect of the act, being an exercise of the police powers of the state, can best be determined upon a hearing upon the merits. In determining whether or not the motion to dismiss should be sustained, the court may look to the allegations on the merits only to ascertain whether or not the bill of complaint states a cause of action involving the construction or application of the Constitution and laws of the United States, and not whether such action is well founded. E. C. Atkins & Co. v. Dunn, County Auditor, et al., 28 F.(2d) 5 (C.C.A.7th). The plaintiffs allege that certain of their constitutional rights are being violated by virtue of the enforcement of the act. The validity of the act must be determined by the court and a proper determination thereof can best be had after a hearing upon the merits. The motion to dismiss should be overruled.

▉ The plaintiffs have made and pressed a petition for an interlocutory injunction. Evidence has been heard upon this petition, and special findings of fact and conclusions of law have, pursuant to Equity Rule 70½, 28 U.S.C.A. following section 723, been made and filed in this cause upon such petition. Upon an application for an interlocutory injunction the plaintiffs are only required to show that they are prima facie entitled to such relief, that the injury to plaintiffs will be certain and irreparable if such application is denied, and that the balance of injury as between the parties favors its issue. Prendergast et al., etc., v. New York Telephone Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853. However, in the instant case, it is necessary for the court to determine the validity of the act in question before a proper finding may be made upon the petition for an interlocutory injunction.

▉ The act in question became a law on March 1, 1933, the day on which it was approved and signed by the Governor. At that time the Eighteenth Amendment to the Constitution of the United States had not yet been repealed. There was also in force at that time a statute of the United States known as the National Prohibition Act (title 2, § 1 [27 U.S.C.A. § 4]), which act was modified on March 22, 1933, 48 Stat. 16, by what is known as the "Collier Act" so as to legalize beer containing an alcoholic content of not more than 3.2 per cent. by weight. Prior to the taking effect of the act in question, there was in force in the State of Indiana a state-wide prohibition act known as the "Wright Bone Dry Law" (Burns' Ann.St. Ind. 1926 § 2714 et seq.), but this law was repealed immediately prior to the passage of the Alcoholic Beverage Act here under consideration. Therefore, the act in question became effective and was the only law regulating the traffic in alcoholic beverages in the state immediately upon its approval. It is urged by the plaintiffs that the act is unconstitutional because it became a law at a time when the Eighteenth Amendment to the Constitution was in force, which amendment prohibited the manufacture, sale, or transportation of intoxicating liquor. In order that this amendment may be effective and be enforced, Congress passed the National Prohibition Act or Volstead Law, which defined intoxicating liquor as that which contains more than one-half of one per cent. of alcohol by volume. The act in question does not use or define the term "intoxicating liquor," but uses the term "alcoholic beverage." There is a distinct difference between the term "intoxicating liquor," as used in the Eighteenth Amendment, and the National Prohibition Act, and the term "alcoholic beverage" as used in the act in question. A beverage may be alcoholic in that it contains *some* alcohol, and yet be far from intoxicating, even as that term is defined in the National Prohibition Act. It is to be noted that the Eighteenth Amendment left to Congress the duty of defining the term "intoxicating liquor." A careful study of the act in question discloses the fact that the Legislature recognized the fact that both the Eighteenth Amendment and the National Prohibition Act were in force at the time of its passage. This fact is apparent when the language of section 31 of the act is considered, which says that "the provisions of this act shall apply only to any alcoholic beverages the manufacture and/or sale of which is permitted under the laws of the United States of America." It is quite possible that the Legislature had in mind that before it convened again the Eighteenth Amendment might be repealed or at least that the National Prohibition Act might be modified

and that the act was intended to meet this situation. The definition of the term "alcoholic beverage" supra, as used in the act, indicates that it was not the intention of the Legislature to limit or define the alcoholic content of any beverage to come within the provisions of the act, but that it was necessary that it contain *some* alcohol. Therefore, as the National Prohibition Act was modified and finally as the Eighteenth Amendment was repealed, the alcoholic content of a malt beverage in Indiana, under the act in question, was limited in the first instance to 3.2 per cent. of alcohol by weight, and in the second instance was unlimited. There is no restriction upon the alcoholic content of any alcoholic beverages in Indiana under the present law. The restriction was removed immediately at the time of the passage of the act in question, limited only by the Eighteenth Amendment and the National Prohibition Act. The taking effect of the act did not depend upon some future action of Congress, but it became effective immediately upon its approval. The fact that the act became effective before the repeal of the Eighteenth Amendment and the modification of the National Prohibition Act does not in any manner affect its validity. Such act does not contravene the Eighteenth Amendment to the Constitution of the United States or the National Prohibition Act.

The plaintiffs further contend that the act in question, and especially the provision thereof relative to the importation of alcoholic malt beverages manufactured outside the state and shipped into the state is invalid and unconstitutional because in violation of section 8, article 1 of the Constitution of the United States. The provision of the Constitution (section 8, article 1) commonly known as the "Commerce Clause" is as follows: "The congress shall have power to * * * regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It may be conceded that the right to manufacture, sell, transport, or in any manner deal in intoxicating liquor, is not an inherent right, but is one subject to legislation. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620. Under its police powers, the state has authority to regulate or entirely prohibit the liquor traffic. It is also recognized as a means of raising revenue for the support of its institutions. Society, and the welfare of our citizens, demand that this traffic be restricted and safeguarded as much as possible, if dealing therein is permitted by the state. This being true, it is necessary that the state provide the machinery by which the law may be enforced and the tax levied thereon collected. It is to be remembered that neither of the plaintiffs is engaged in business within the State of Indiana, but their property and places of business are all located in some foreign state. They are each engaged in the manufacture and sale of alcoholic malt beverages and of course desire as wide a range of territory within which to sell their product as possible. The act in question provides a means by which their product may be sold, transported into Indiana, and a demand therefor created by the citizens of the state. That means is not by selling direct to the consumer or retailer, but by selling to an individual or corporation authorized or licensed by the State of Indiana to purchase their product, such person being known as an importer. For the privilege of being granted a permit to so purchase such product and transport it into the state, such importer is required to provide a bond and pay a license fee of $2,500 per annum. The amount of this license fee is no concern of these plaintiffs, because the price which they receive for their product is not affected thereby. The fact is that domestic manufacturers of the same product as they are required to pay the same license fee as are the importers, while they (the plaintiffs) have no fee to pay. The fact that the plaintiffs may have been required to pay each importer a fee for the execution of a contract to handle their product is a matter of contract between them and does not effect the validity of the act.

The importers have their investments and have to create a market for plaintiffs' product before their business may be profitable to them. The plaintiffs are not themselves engaged in interstate commerce in so far as their product coming into Indiana is concerned. It is true that their product does enter interstate commerce, but only after they have parted with the title thereto and, so far as the evidence discloses, have received the fair and regular price therefor. It is, therefore, reasonable to conclude that the provision of the act in question, concerning the means by which their product is transported into the state, does not create a burden upon interstate commerce or upon the product so shipped, in so far as these plaintiffs are concerned. It seems that an individual who manufactures alcoholic malt beverages out-

side a state cannot complain of the restrictions placed upon him by virtue of the laws of that state. It is, of course, well settled that, because of the peculiar character of the liquor traffic, each state may deal with the problem presented thereby under its police powers. The product used in the traffic is not subject to transportation unrestricted in interstate commerce as are other products or commodities which are not subject to the police powers of the various states. This question has been discussed by the Supreme Court of the United States in various decisions having to do with a consideration of the validity of the Webb-Kenyon Act and other legislation affecting the rights of interstate commerce when applied to intoxicating liquors. The state has authority to exercise a measure of control over the interstate commerce in intoxicating liquor coming within its borders by reason of the provisions contained in the Wilson Act, 27 U.S.C.A. § 121, the Webb-Kenyon Act, 27 U.S.C.A. § 122 and note, and the Reed Amendment, 27 U.S.C. A. § 123. These acts were not repealed by virtue of the Eighteenth Amendment or the National Prohibition Act. Washington v. Miller, 235 U.S. 422, 35 S.Ct. 119, 59 L.Ed. 295. The argument was made in the case of James Clark Distilling Co. v. Western Maryland Railway Company et al., 242 U.S. 311, 37 S.Ct. 180, 187, 61 L. Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845 with reference to the Commerce Clause that to permit the state prohibition of intoxicating liquor to interfere with interstate commerce in that article "lays the basis for subjecting interstate commerce in all articles to state control, and therefore destroys the Constitution." In answering that contention, the Supreme Court said: "The want of force in the suggested inconvenience becomes patent by considering the principle which, after all, dominates and controls the question here presented; that is, the subject regulated and the extreme power to which that subject may be subjected. The fact that regulations of liquor have been upheld in numberless instances which would have been repugnant to the great guaranties of the Constitution but for the enlarged right possessed by government to regulate liquor has never, that we are aware of, been taken as affording the basis for the thought that government might exert an enlarged power as to subjects to which, under the constitutional guaranties, such enlarged power could not be applied. In other words, the exceptional

nature of the subject here regulated is the basis upon which the exceptional power exerted must rest, and affords no ground for any fear that such power may be constitutionally extended to things which it may not, consistently with the guaranties of the Constitution, embrace." Further, in the same case, it is stated that the purpose of the Webb-Kenyon Act was "to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in states contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught." A state may prohibit the liquor traffic within its borders altogether, thereby prohibiting the shipment of intoxicating liquor into the state altogether. This is not in violation of the Commerce Clause of the Federal Constitution. Therefore, the power of absolute prohibition gives the state the lesser power of prescribing by law the conditions under which such shipments may be allowed. Seaboard Air Line Railway v. State of North Carolina, 245 U.S. 298, 38 S.Ct. 96, 62 L.Ed. 299.

In the case of McCormick & Co., Inc., et al. v. Brown, State Commissioner, et al., 286 U.S. 131, 52 S.Ct. 522, 76 L.Ed. 1017, 87 A.L.R. 448, a case somewhat similar to the instant case, the Supreme Court held that a nonresident manufacturer and wholesaler is required to comply with the state law requiring him to obtain a state permit and pay a state license fee before shipping his product (an alcoholic preparation not normally used as a beverage, but may be used illegally as such) into the state, even though he may have complied with the federal law regarding the sale of such product. In this case the regulations of the state commissioner were held to be reasonable, and that neither the regulations of the commissioner nor the provisions of the law itself pertaining to the importation and sale of such alcoholic preparations was in contravention of the provisions of the Federal Constitution, including the Commerce Clause. This case originally came before a three-judge District Court in the Southern District of West Virginia, which court sustained the validity of the statute attacked. See McCormick & Co., Inc., et al. v. Brown, Com'r, et al., 58 F. (2d) 994.

The Supreme Court of the United States has had occasion to consider the validity of many state statutes pertaining to the regulation of the liquor traffic over a period

of many years. A case reported almost a half century ago, and before the passage of either the Wilson Act, the Webb-Kenyon Act, or the Reed Amendment, is very illuminative when applied to the instant case. Reference is made to the case of Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 8, 32 L.Ed. 346. In this case the validity of a statute of the State of Iowa was first attacked in the state courts. Among the various provisions of the statute was one that foreign intoxicating liquors may be imported into the state and there kept for sale by the importer in the original packages or for transportation in such packages and sale beyond the limits of the state. There was also a provision in the statute providing that intoxicating liquors may be manufactured and sold within the state for mechanical, medicinal, culinary, and sacramental purposes but no other, not even for the purpose of transportation beyond the limits of the state. Kidd was a manufacturer of intoxicating liquor and complied with the state law in so far as the obtaining of a permit, the payment of taxes, etc., were concerned, but he shipped the liquor outside the state in violation of the state law. In other words, he became an "exporter" instead of an "importer" in violation of the state law. The Supreme Court of the State of Iowa (Pearson v. International Distillery, 72 Iowa, 348, 34 N.W. 1) held the statute valid and that it did not contravene the Commerce Clause of the federal Constitution nor any other provision thereof. This case went to the Supreme Court of the United States upon a writ of error to the Supreme Court of the State of Iowa. It was held by the Supreme Court of the United States that the statute was valid and that it did not conflict with section 8, article 1 (Commerce Clause) of the Constitution of the United States by undertaking to regulate commerce between the states, nor with the Fourteenth Amendment to the Constitution of the United States. As to the effect of the decision of the Supreme Court of Iowa, the court said: "As the record presents none of the exceptional conditions which sometimes impel this court to disregard inadmissible constructions given by state courts to even their own state statutes and state constitutions, we shall adopt the construction of the statute of Iowa under consideration which has been given it by the supreme court of that state."

The Supreme Court of the State of Indiana, in the case of Fry et al. v. Rosen, supra, had occasion to pass upon the validity of the act in question. In that case it was contended by Rosen that the act contravened certain provisions of the state Constitution and also certain provisions of the Constitution of the United States. It was contended that the act especially contravened the provisions of the Eighteenth and Fourteenth Amendments respectively to the Constitution of the United States, also section 8, article 1 thereof. These contentions were not sustained by the Supreme Court, but, on the contrary, the act was held valid, and it was held that it is not repugnant to either the Constitution of the State or the Constitution of the United States. The construction thus given the act should be adopted by this court. Kidd v. Pearson, supra. That does not mean, of course, that this court is bound by such finding in so far as the provisions of the Federal Constitution are concerned, but due consideration should be given thereto. In a well-reasoned opinion, the court, speaking through Justice Treanor, said: "The importing agent does not derive authority to receive, possess, and sell alcoholic malt beverages from, and as a commercial agent of, a principal outside of Indiana. As indicated above, a vendor of alcoholic malt beverages who does business outside of Indiana has no right or privilege to transport such beverages into Indiana by reason of any protection afforded by the interstate commerce clause of the United States Constitution." An appeal was prosecuted by Rosen to the Supreme Court of the United States (293 U.S. 526, 55 S.Ct. 143, 79 L.Ed. 636), and on November 7th, 1934, the following order was entered by that court: "The appeal is dismissed upon the ground that the jurisdictional statement fails to disclose any properly presented substantial federal question. Rule 12." It may or may not be significant that paragraph 4 of the jurisdictional statement of Rosen stated that: "It is the contention of the appellant that Sections 6, 8, * * * of Chapter 80 of the Acts of the General Assembly of the State of Indiana for the year 1933, are repugnant to Section 8, Article I and to the 14th and 18th Amendments to the Constitution of the United States." It will be recalled, however, that these are the same provisions of the Constitution attacked in the instant case.

The contention of the plaintiffs that there is an unjust discrimination between the plaintiffs and citizens of Indiana who are engaged in the same or a similar busi-

ness cannot be sustained by the facts. Manufacturers of alcoholic malt beverages who reside in Indiana pay the same license fee as that paid by an importer. In addition thereto, they have their investments within the state and are subject to all property taxes for the support of our institutions. They are also required to spend large sums of money for advertisement and promotion purposes, while all this expense, in so far as the plaintiffs are concerned, is borne by the importers. The wholesalers in Indiana pay a license fee of only $1,000, but their position is not comparable with the plaintiffs'. They also have investments in this state upon which they are required to pay taxes, and in addition, they must meet the expenses of advertisement, etc., which are necessary to place their product upon the market.

The right to regulate or prohibit the traffic in intoxicating liquor is a valid exercise of the police power of the state which is reserved to the state by the Constitution of the United States, and the exercise of that power violates none of the property rights secured under the Fourteenth Amendment. The Supreme Court said, in the case of Crane v. Campbell, 245 U.S. 304, 38 S.Ct. 98, 99, 62 L.Ed. 304: "It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment." The provisions of the act in question necessarily require the promulgation of regulations to make it effective. The regulations promulgated by the Excise Director are intended for that purpose and are necessary and proper regulations for the full and complete administration of the act. McCormick & Co., Inc., et al. v. Brown, State Com'r., et al., supra.

It is clear that the provisions of the Constitution of the United States providing for equal protection of the citizens of the several states are not violated by the act in question, and it therefore follows that such act does not violate the provisions of the sections of the federal statute commonly known as the "Equal Rights Statutes," about which the plaintiffs complain.

Having reached the conclusion that the act in question is valid and does not contravene the provisions of the Constitution and laws of the United States, and further that the facts disclose no ground for the issuance of an interlocutory injunction, the petition therefor must be and is denied.

An order will be entered accordingly.

SLICK, District Judge.

I concur in the conclusions that the motion to dismiss should be overruled and that the petition for an interlocutory injunction should be denied. I took no part, however, in the consideration of the constitutionality of the act in question and express no opinion thereon.