FRY, EXCISE DIRECTOR, ET AL. *v.* ROSEN.*

[No. 26,340. Filed March 16, 1934. Rehearing denied June 9, 1934.]

*NOTE. This case should have been reported in Volume 206, following *Whitney* v. *State*, June 8, 1934.

410

*Philip Lutz, Jr.,* Attorney-General, *Edward Barce,* Assistant Attorney-General, *Herbert J. Patrick,* Deputy Attorney-General, *John H. Underwood,* and *George E. Hershman,* for appellant.

*Patterson & Thiel,* for appellee.

TREANOR, J.—This is an action in which Abe Rosen, appellee, brought suit for injunction against Paul Fry,

as Excise Director of the State of Indiana, et al., to enjoin and restrain them from enforcing or attempting to enforce against the appellee, any of the provisions of an act of the General Assembly of the State of Indiana, entitled, "An Act concerning alcoholic beverages, and declaring an emergency," approved March 1, 1933 (Acts 1933, ch. 80, p. 492), on the ground that said act is unconstitutional. The Lake Superior Court, Room One, sitting in Hammond, Indiana, upon the showing made in such petition, issued a temporary restraining order without notice against said appellants and each of them. After a hearing on the question of resolving such restraining order into a temporary injunction, the court sustained the motion of appellee to resolve the restraining order into a temporary injunction. The sole question urged on appeal is the constitutionality of sections of the act involved in the litigation. The following portions of appellee's complaint presents fully the grounds relied upon by appellee for relief:

"Your petitioner further says that the defendants, and each of them, are threatening to arrest and prosecute your petitioner for violation of the act of the General Assembly of the State of Indiana, duly passed by the said General Assembly on the — day of February, 1933, and approved by the Governor of the State of Indiana on the first day of March, 1933, entitled 'An Act Concerning Alcoholic Beverages and Declaring an Emergency.'

"That your petitioner in the conduct of his business proposes to import and sell at wholesale nonintoxicating malt and vinous beverages such as are permitted under the laws and Constitution of the United States.

"That your petitioner has been threatened by the defendants and each of them with arrest and prosecution under the provisions of the above entitled act, which, your petitioner says, is unconstitutional and void and in violation of Section 8 of Article I of the Constitution of the United States, which provides that 'Congress shall have power to . . .

regulate commerce with foreign nations and among the several States.'

"That it is in violation of Section 10 of Article I of the Constitution of the United States, which provides that 'No State shall . . . without the consent of Congress, lay any imposts or duties on imports or exports, except that may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts laid by any State on imports and exports shall be for the use of the treasury of the United States.'

"That it is in violation of Section 4 of Article IV of the Constitution of the United States, which provides that 'The United States shall guarantee to every State in this Union a republican form of Government . . .'

"That it is in violation of Article VI of the Constitution of the United States, which provides that 'This Constitution and the Laws of the United States which shall be made in pursuance thereof and all treaties made or which shall be made under authority of the United States shall be the Supreme Law of the land and the judges in every state shall be bound thereby, any thing in the Constitution or laws of the State or territories to the contrary notwithstanding.'

"That it is in violation of Article XIV of the Amendments to the Constitution of the United States, which provides that 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

"That it is in violation of Article XVIII of the Amendments to the Constitution of the United States and the laws duly passed by Congress under the power conferred by said Eighteenth Article of the Amendments, known as the National Prohibition Act, in that said Act concerning alcoholic beverages permits the manufacture, possession and sale of intoxicating alcoholic beverages at a time when said National Prohibition Act specifically prohibits said manufacture, possession and sale.

"That it is in violation of Section 75 of Article I of the Constitution of the State of Indiana, which

provides that 'The General Assembly shall not grant to any citizen or class of citizens privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.' (§23, Art. I.)

"That it is in violation of Section 77 of Article I of the Constitution of the State of Indiana, which provides that 'No law shall be passed, the taking effect of which shall be made to depend upon any authority except as provided in this Constitution.' (§25, Art. I.)

"That it is in violation of Section I of Article III of the Constitution of the State of Indiana, which provides that 'The powers of Government are divided into three separate departments: The Legislative, the Executive, including the Administrative, and the Judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of the other, except as in this Constitution expressly provided.'

"That it is in violation of Section 23 of Article IV of the Constitution of the State of Indiana, which provides that 'In all cases enumerated in the previous section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.'

"Your petitioner says that said Act of the General Assembly, entitled 'An Act Concerning Alcoholic Beverages and Declaring an Emergency' is not general in its application to all citizens; that it creates an unreasonable monopoly of a legitimate business and purports to authorize the defendant, Paul Fry, as Excise Director, to administer said monopoly. That said Act does not purport to grant any franchises to individuals, persons or corporations for the conduct of any business monopolistic in its character, but purports to grant to said defendant Excise Director authority to grant to certain persons or individuals only, and to a certain number of persons only authority to manufacture, sell at wholesale and import non-intoxicating alcoholic beverages in the State of Indiana, and to refuse said right and authority to other persons equally qualified to exercise such right.

"That it is an unreasonable restraint of trade and an unreasonable interference with Interstate Commerce, and unreasonable denial to your petitioner of the equal protection of the laws, and unreasonable

interference with your petitioner in following a lawful occupation in making his livelihood."

The "Act concerning alcoholic beverages," comprises an elaborate mechanism for the purpose of regulating the business conduct of all persons who shall "for commercial purposes manufacture for sale, bottle, sell, barter, transport, deliver, furnish, or possess any alcoholic beverages, malt syrup, malt extract, liquid malt or wort," and "all beverages containing alcohol shall be subject to the provisions of this act." The act provides for an excise director who is charged with responsibility for the administration of the provisions of the act. The following excerpts relate to the powers and duties of the director. Acts 1933, ch. 80, p. 496, §§12-206—12-208, Burns 1933, §§3728-3730, Baldwin's 1934:

"Sec. 6. The excise director shall have and exercise the following functions, duties and powers, to wit:

(a) Appoint every officer, inspector, clerk, deputy or other employee required for the proper exercise of his functions, duties and powers, as herein defined, dismiss them, fix their salary or remuneration subject to the approval of the budget committee, assign them their office, positions and title, define their respective duties and powers, and engage the services of experts and of persons engaged in the practice of a profession.

(b) Control manufacture, bottling, possession, sale and delivery of alcoholic beverages, in accordance with the provisions of this act.

(c) Grant, refuse or cancel permits for the manufacture, bottling, possession, sale and delivery of alcoholic beverages in accordance with the provisions of this act . . .:

"Sec. 7. The director shall divide the state into districts for the purpose of administering this act, which districts shall be numbered and shall conform as nearly as possible, for the proper administration of the act, to the congressional districts.

"Sec. 8. Any person desiring to manufacture for commercial purposes, import, possess for the pur-

pose of sale, bottle for sale, sell or deliver any alcoholic malt beverages shall make application to the director for a permit to do or perform any of such acts, which application shall be in writing, on forms to be prescribed and furnished by the director; and thereupon the director may, in his discretion, grant any such permit, subject to the following restrictions, to wit:

"(a) The director shall not, in any event, issue more than one permit to manufacture alcoholic malt beverages in this state, for each unit of population of the State of Indiana according to the last preceding decennial census of the United States of America of one hundred fifty thousand or major fraction thereof, no more than three of which shall be located in any one district; nor more than ten permits to act as importing agent; nor more than one permit to wholesale alcoholic malt beverages in each county in the state having a total population, according to the last preceding decennial census of the United States, of twenty thousand or less; . . ."

It is thoroughly established that traffic in alcoholic intoxicating beverages is a proper subject of legislative regulation under the police power of the state. ▪ We consider it settled by numerous decisions of this court that the General Assembly by appropriate legislation can either restrict or completely prohibit the manufacture and sale of alcoholic intoxicating beverages. Prior to the experiment of state and national prohibition our General Assembly had attempted to regulate the traffic by placing various restrictions upon the conduct of the business, by restricting the number of permits or licenses to retail and by local prohibition. The earlier legislative restrictions were made effective chiefly through local governmental units. The Act of 1933 abandons local control and prohibition and creates a state system of restrictive control of the traffic in all alcoholic beverages, whether intoxicating or not. The old license or permit method of control of the retail business has been extended to manufacturing, wholesaling, and im-

porting. In short, the effect of the Act is to confer upon a state agency power "to control the manufacture, bottling, possession, sale and delivery of alcoholic beverages, in accordance with the provisions of this act;" which power includes the authority to "grant, refuse or cancel permits for the manufacture, bottling, possession, sale and delivery of alcoholic beverages in accordance with the provisions of this act."

As already stated, the Alcoholic Beverages Act of 1933 applies to all alcoholic beverages irrespective of alcoholic content. Appellee makes the point that the restrictive features of the act cannot be justified under the police power insofar as they affect traffic in non-intoxicating beverages of alcoholic content. In the case of *Schmitt* v. *F. V. Cook Brewing Co.* (1918), 187 Ind. 623, 634, 120 N. E. 19, 3 A. L. R. 270, this court, after citing numerous decisions, summed up their holdings as follows:

> "It will be seen by the authorities which we have heretofore set out that to prohibit the traffic the legislature may define as an intoxicant that which is far from intoxicating, in order to prevent the manufacture and sale of that which is intoxicating; . . ."

When we grant that the General Assembly can classify intoxicating alcoholic beverages for the purpose of prohibiting or regulating commercial traffic therein and further grant that for the purpose of making the prohibition or regulation effective as to intoxicating alcoholic beverages the General Assembly can define "as an intoxicant that which is far from intoxicating," it would seem to be a distinction without substance to hold that the General Assembly cannot classify "all alcoholic beverages" for the same legislative treatment. The validity of the act in question, as an exercise of police power, is not affected by reason of the fact that its provisions apply

to non-intoxicating alcoholic beverages as well as to intoxicating beverages. There is no violation of the Federal Constitution (*Purity Extract & Tonic Co.* v. *Lynch* [1912], 226 U. S. 192).

In view of the specific provisions of Acts of Congress respecting the interstate commerce status of intoxicating liquors generally and of "beer, ale, porter, wine, similar fermented malt or vinous liquor and fruit juice, containing 3.2 percentum or less of alcohol," there is nothing in the Alcoholic Beverages Act which can be said to constitute a legal interference with interstate commerce. But apart from the foregoing we are convinced that the provision that importing agents "shall have the exclusive right to import such alcoholic malt beverages into the State of Indiana for the purpose of bottling, possessing and selling the same under and pursuant to the provisions of this act and of the Constitutions and laws of the United States of America" constitutes a reasonable exercise of the police power and is valid although the effect may be to restrict the shipment into the state of non-intoxicating alcoholic malt beverages. Nor do we find any provision in the act which can be treated as laying "any imposts or duties on imports or exports." (Art. I, §10, U. S. Const.) Apparently appellee and appellants, in their discussion of "import" and "impost" refer to the following clause, Acts 1933, ch. 80, p. 492, §8(a), §12-208, Burns 1933, §3730, Baldwin's 1934.

> "Provided, however, That all such alcoholic malt beverages so imported shall be subject upon their sale or withdrawal for sale in the State of Indiana from the plant of such agent to the license fee thereon, as hereinafter provided in this act, for such beverages manufactured in this state; . . ."

We agree with appellee that the foregoing "license fee" is not intended for, and cannot be considered an inspection fee. It is obviously a special excise tax imposed upon

importing agents for the privilege of doing business as vendors of alcoholic malt beverages and measured by the amount of sales. The importing agent does not derive authority to receive, possess, and sell alcoholic malt beverages from, and as a commercial ágent of, a principal outside of Indiana. As indicated above, a vendor of alcoholic malt beverages who does business outside of Indiana, has no right or privilege to transport such beverages into Indiana by reason of any protection afforded by the interstate commerce clause of the United States Constitution. Consequently the fee or tax in question cannot be treated as a tax upon the right or privilege of transporting alcoholic beverages into Indiana. (The importing agent cannot legally receive into his possession for purposes of sale any alcoholic malt beverages except as the State of Indiana confers the privilege.) The privilege of importing "alcoholic malt beverages for the purpose of bottling, possession and selling" is entirely the creation of the State of Indiana; and the agent is not subject to the payment of the fee until, and only to the extent that, alcoholic beverages are sold or withdrawn for sale from the plant of the agent in Indiana. The fee is an excise tax on the business of selling alcoholic malt beverages, whether manufactured within or without Indiana, the permit of an importing agent limiting the holder's business to the handling of beverages manufactured outside of Indiana.

No doubt the Alcoholic Beverages Act was enacted in anticipation of a liberalization of the laws of the United States respecting the regulation of the traffic in alcoholic beverages. But it is clear that its taking effect was not contingent upon some future event. Nor did its taking effect depend upon "any authority except as provided in" the Constitution of Indiana. The scope of its operating effect might change by reason of

change in the law of the United States, but the act was in effect as soon as it received executive approval. Prior to the going into effect of the Collyer Act (27 U. S. C. A., §64a, et seq., March 22, 1933, ch. 4, 48 Stat.-at-Large 17) the Indiana statute could apply only to alcoholic malt beverages having an alcoholic content of $\frac{1}{2}$ of 1 per centum or less for the simple reason that under the law of the United States no one could be authorized in Indiana to sell malt beverages with an alcoholic content of more than $\frac{1}{2}$ of 1 per centum. Since at present in Indiana there is neither state nor national regulation of traffic in alcoholic malt beverages based upon per centum of alcoholic content the system of control under the Indiana Alcoholic Beverages Act applies to alcoholic malt beverages irrespective of per centum of alcoholic content. If some future General Assembly should prohibit traffic in alcoholic beverages having more than a named per centum of alcoholic content the present system of control would still be in effect for alcoholic malt beverages having a lesser alcoholic content, unless expressly repealed or modified.

Furthermore, while the scope of the operative effect of the Alcoholic Beverages Act might change as a result of changes in the Federal law, any question of legality by reason of conflict with the law of the United States was avoided by express provision in §31 that "the provisions of this act shall apply only to any alcoholic beverages the manufacture and/or sale of which is permitted under the laws of the United States of America."

As already stated the Alcoholic Beverages Act vests in the Excise Director full administrative power to make effective the system of regulation provided for in the act. The contentions most strongly urged by appellee is that §6 of the act is unconstitutional because of the extent of the power conferred

upon the Excise Director. We have the same problem here as is involved in all cases where the General Assembly has conferred upon an administrative board or official the power to do specific acts or make rules and regulations to make effective the methods provided in the act to achieve its general purpose. We do not believe that the Alcoholic Beverages Act violates the rule against delegation of legislative power, nor that it offends the constitutional doctrine of separation of powers. The things which the Excise Director is authorized to do are acts which relate directly to, and are essential to, the performance of duties imposed upon the Director by the very terms of the statute. The power conferred is one to make decisions or "to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Locke's Appeal* (1873), 72 Pa. St. 491, 13 Am. Rep. 716. It has been aptly stated that "the true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as what it shall be, and *conferring an authority* or discretion as to its execution, to be exercised under and in pursuance of the law." (Our italics.) *Cincinnati, etc., R. Co.* v. *Commissioners, etc.,* (1852), 1 Oh. St. 77, 88. And, for example, in the statute before us, it is not provided that the Excise Director shall investigate and determine whether, as a matter of policy, permits should be issued to manufacturers, wholesalers, importing agents, and retailers; but the act authorizes under certain restrictions the granting of permits and the Excise Director is required to determine the individuals to whom permits shall be granted, a purely administrative act. Further, we find nothing in the provisions of the Alcoholic Beverages Act which violates the constitutional requirements respecting separation of powers. In general the powers and duties of the Excise Director are

of the same nature as those of numerous administrative boards and officials which are recognized as being neither judicial nor legislative. *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89, 80 Am. St. 195, 50 L. R. A. 64; *Isenhour* v. *State* (1901), 157 Ind. 517, 62 N. E. 40, 87 Am. St. 228.

The license or permit method of regulating traffic in alcoholic beverages was tried in this State prior to the 1917 Indiana Prohibition Act. The number of licenses was limited and this method was recognized as valid in the case of *State, ex rel.* v. *Board* (1913), 179 Ind. 513, 515, 101 N. E. 813 the opinion of this court containing the following statements:

> "It is to be borne in mind that the right to sell intoxicating liquors is not a natural and inherent or inalienable right, or a property or personal right. (citing cases). It may therefore be restricted both in the number of the licenses and the manner of their exercise."

The General Assembly has seen fit to confer upon the Excise Director complete discretion in the matter of selecting permit holders, and we cannot say that in so doing the General Assembly has gone beyond its constitutional power. It is entirely for the General Assembly to say whether any permits shall be granted and upon what terms; and since neither appellee nor anyone else has any legally recognized interest in the securing of a permit, apart from the terms and conditions of the Alcoholic Beverages Act, it follows that none of the provisions of either the Indiana or the United States Constitution designed to protect personal or property interests can be violated by the Director's refusal to grant a permit to any particular person.

> "Charter rights, license rights, contract rights are all subject to the inherent power of govern-

ment to protect the health, morals, or welfare of the public." *Schmitt* v. *F. W. Cook Brewing Co., supra,* p. 627.

"The 'privileges and immunities' section of our Constitution, the 'class' section and the 'general law' section are not violated if an act is reasonably designed to protect the health, morals or welfare of the public." Ibid. p. 635.

The Supreme Court of the United States has frequently held that the Federal Constitution is not involved in the restrictive or prohibitive legislation of the states when exercised under its police power. The following early statements of that Court express its consistent position:

"But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. . . . Regulations for these purposes may press with more or less weight upon one than upon another, but there are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." *Barbier* v. *Connolly* (1885), 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923.

"In other words, (it is contended) although the State, in the exercise of her police powers, may lawfully prohibit the manufacture and sale, within her limits, of intoxicating liquors to be used as a

beverage, legislation having that object in view cannot be enforced against those who, at the time, happen to own property, the chief value of which consists in its fitness for such manufacturing purposes, unless compensation is first made for the diminution in the value of their property, resulting from such prohibitory enactments.

"This interpretation of the Fourteenth Amendment is inadmissible. It cannot be supposed that the States intended, by adopting that amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community. . . .

"The principle, that no person shall be deprived of life, liberty, or property, without due process of law, was embodied, in substance, in the constitutions of nearly all, if not all, of the states at the time of the adoption of the Fourteenth Amendment; and it has never been regarded as incompatible with the principle, equally vital, because essential to the peace and safety of society, that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." *Mugler* v. *Kansas* (1887), 123 U. S. 623, 664, 665, 8 Sup. Ct. 273, 31 L. Ed. 205.

We have already indicated that we consider the gallonage "license fee" an excise tax and consequently it is not affected by §1, Art. X (Ind. Const.) which requires a uniform system of assessment and taxation under a general levy. As stated in *Bright* v. *McCullough* (1866), 27 Ind. 223, 232: "Indirect taxes, imposed not merely for the purposes of revenue, but in restraint of a particular business or calling, or as a license on particular pursuits, or as a mere police regulation, do not come within the spirit or meaning of the provisions of the constitution referred to."

Since we hold that the General Assembly has made, and constitutionally can make, the granting or refusing of permits a matter of free discretion of the Excise Director it follows that a misuse of this discretionary power cannot affect the validity of

the legislative act. No doubt licenses were granted for political or personal reasons under the old license law, but such conduct on the part of licensing officials was never supposed to affect the validity of statutes authorizing licenses to be granted. Whether a licensing officer or board should be granted uncontrolled discretion or should be hedged about by restrictions in the matter of granting or refusing of licenses to engage in the traffic in alcoholic beverages is a matter of policy to be decided by the General Assembly.

> "It is not for this Court to try to excel legislative wisdom on the question of expediency." Townsend, J., in *Schmitt* v. *F. V. Cook Brewing Co., supra*, p. 637.

Appellee urges that the "Excise Director with the advice of the Attorney General of the State and executive order of the Governor" has violated the Act by permitting the sale of draft beer and has done more thereby "to bring back the open saloon and bar-room in the State of Indiana than anything else that has ever been done . . . since the taking effect of an Act of the General Assembly known as the Wright Bone dry Act of 1918." But this does not involve the validity of the Act. Alcoholic beverages can be legally sold only in the manner and form prescribed by the Act. Obviously no executive official can enlarge the scope of a legislative act by order or permit. If the act permits draft beer to be sold, that does not render the act unconstitutional; if it does not authorize such sales then the order or permit referred to is invalid and the sales are beyond the protection of the Act. But that question is not involved in this case.

We conclude that traffic in alcoholic beverages, without reference to per centum of alcoholic content, can be regulated and controlled under the police power. And in our opinion all the provisions of the Act, brought into question, regulating and

controlling the "manufacture, bottling, possession, sale and delivery of alcoholic beverages" are constitutional, including the sections which confer upon the Excise Director the power to grant permits to manufacture, wholesale, import and retail alcoholic beverages.

We hold that the Lake Superior Court erred in granting the temporary injunction against appellants. The judgment of the Lake Superior Court is reversed and the cause remanded with directions to that court to dissolve the temporary injunction and to dismiss the action.