469 P.2d 141

Leland L. FELLOWS and Doralea Sanders Bean, Petitioners-Appellees,

v.

Addie SHULTZ, Leon Ramey and Ethel Ramey, Respondents-Protestants-Appellants,

v.

STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, Defendant-Appellee.

No. 8804.

Supreme Court of New Mexico.

May 4, 1970.

D. D. Archer, Artesia, for respondents-appellants.

Sanders & Bruin, Roswell, for petitioners-appellees.

James A. Maloney, Atty. Gen., F. Harlan Flint, Peter B. Shoenfeld, Special Asst. Attys. Gen., Santa Fe, for defendant-appellee.

## OPINION

SISK, Justice.

Appellants protested an application filed by appellees with the State Engineer for a change of location of a water well, in accordance with the provisions of § 75–11–7, N.M.S.A.1953, as amended in 1967. The constitutionality of this statute is challenged by both appellants and the State Engineer. The trial court entered judgment for appellees on the merits of their application, but because the constitutional question is determinative it is not necessary to consider the additional points asserted on appeal.

We must first determine whether § 75–11–7, supra, is constitutional or whether it is violative of art. III, § 1 of the New Mexico Constitution, which provides for the separation of powers between the three departments of government. If the statute is repugnant to the separation of powers clause, we must then determine whether its constitutionality was saved or validated by the subsequent adoption of art. XVI, § 5 of the New Mexico Constitution. Article III, § 1, supra, provides:

> "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this Constitution otherwise expressly directed or permitted."

The purpose, meaning and interpretation of this section of our constitution was first

considered in detail in Kelley v. Marron, 21 N.M. 239, 153 P. 262 (1915).

Our first concern in the present case is whether § 75–11–7, supra, requires the exercise by the courts of powers which are fundamentally executive or administrative in nature. The problem arises because of the development of administrative agencies, which we have had in New Mexico since statehood. See art. XI, §§ 1 through 11, New Mexico Constitution, which establish the State Corporation Commission and grant to it powers which would otherwise generally be legislative in nature. San Juan Coal & Coke Co. v. Santa Fe, S. J. & N. Ry., 35 N.M. 512, 2 P.2d 305 (1931). This court has also determined that certain powers granted to that administrative agency by statute were legislative or administrative as opposed to judicial. State ex rel. State Corp. Comm'n v. Zinn, 72 N.M. 29, 380 P.2d 182 (1963); Harris v. State Corp. Comm'n, 46 N.M. 352, 129 P.2d 323 (1942). In Fischer v. Rakagis, 59 N.M. 463, 469, 286 P.2d 312, 316 (1955), we said, "[t]hat the legislature may create boards, such as boards for the licensing of contractors, and vest them with administrative powers, needs no citation of authorities."

■ This court has held that the legislature, in exercising its police powers, may confer certain "quasi-judicial" powers on administrative agencies with regard to laws affecting the general public, but that such powers do not extend to determinations of rights and liabilities between individuals. State ex rel. Hovey Concrete Products Co. v. Mechem, 63 N.M. 250, 252, 316 P.2d 1069 (1957); State v. Kelly, 27 N.M. 412, 202 P. 524, 530, 21 A.L.R. 156 (1921).

The State Engineer has been held to have administrative powers. In Kelley v. Carlsbad Irrigation District, 71 N.M. 464, 379 P.2d 763 (1963), the court determined that a review on appeal from a decision of the State Engineer was controlled by the rules applicable to review of decisions and orders of administrative agencies as announced in Continental Oil Co. v. Oil Conservation Comm'n, 70 N.M. 310, 373 P.2d 809 (1962).

Section 75–11–7, supra, the statute here in question, reads:

"The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications.

"When the owner of a water right makes application or applications for a temporary change of not to exceed one [1] year for not more than three [3] acre-feet of water to a different location, or to a different use, or both, the state engineer shall make an investigation, and, if such change does not permanently impair any vested rights of others, he shall make an order authorizing the change. If he shall find that the change sought might impair such rights, he shall order advertisement and hearing as in other cases.

"If objections or protests have been filed within the time prescribed in the notice, or if the state engineer is of the opinion that the permit should not be issued, the state engineer shall notify the applicant of that fact by certified mail sent to the address shown in the application. Unless the applicant files within thirty [30] days after the receipt of notice by certified mail an action for hearing in the district court of the county in which the proposed well or wells have been, or will be located, the state engineer may proceed to deny the permit. Said application shall then be heard and tried as cases originally docketed in the district court, and the state engineer shall be a party thereto.

"The decision of the district court, without jury, shall be binding on the state engineer who shall thereafter act in accordance with such decision unless

within sixty [60] days after entry of such decision or judgment an appeal shall be taken."

The last two paragraphs, which were added by amendment in 1967 (ch. 308, § 3, Laws of 1967), create the constitutional problem.

 We recognize and reaffirm the long-established rule which was stated in the opinion on rehearing in State v. Armstrong, 31 N.M. 220, 255, 243 P. 333, 347 (1924):

"The Legislature is a co-ordinate branch of our state government. Its prerogative in the matter of legislation is to be questioned solely from the standpoint of our federal or state constitutional limitations. The function of the courts in scrutinizing acts of the Legislature is not to raise possible doubt nor to listen to captious criticism. The Legislature possessing the sole power of enacting law, it will not be presumed that the people have intended to limit its power or practice by unreasonable or arbitrary restrictions. Every presumption is ordinarily to be indulged in favor of the validity and regularity of legislative acts and procedure. * * *"

For some of the numerous other cases which announce this rule, see In re Estate of Welch, 80 N.M. 448, 457 P.2d 380 (1969); City of Raton v. Sproule, 78 N.M. 138, 429 P.2d 336 (1967); Drink, Inc. v. Babcock, 77 N.M. 277, 421 P.2d 798 (1966).

The crucial question here, however, is whether a proceeding which has long been established as administrative in nature can be made judicial in nature by the legislative act of removing such proceeding from the jurisdiction of an administrative body and placing it within the original jurisdiction of the courts, as was attempted by the change in procedure contained in the 1967 amendment to § 75–11–7, supra. In Continental Oil Co. v. Oil Conservation Comm'n, supra, this court said:

"* * * [I]t should be initially recognized that an administrative body may be delegated the power to make fact determinations to which the law, as set forth by the legislative body, is to be applied. See, Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 657 [sic 145], 61 S.Ct. 524, 85 L.Ed. 624, in which it is said:

" 'The essentials of the legislative function are the determination of the legislative policy and its formulation as a rule of conduct. Those essentials are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective.' "

In Kelley v. Carlsbad Irrigation District, supra, which also involved the State Engineer, this court considered the proper scope of review under § 75–6–1, N.M.S.A. 1953, of a decision denying an applicant the right to change the point of diversion of surface water under § 75–5–23, N.M.S.A.1953. Section 75–6–1, supra, provided that on appeal the proceeding should be "de novo," which in effect would make it a judicial determination. We quote at length from Kelley, supra:

"The question of the proper scope of review is immediately presented upon the taking of an appeal from any decision of the state engineer. Even though the review by the district court, in this case, was prior to the decision of this court in Heine v. Reynolds, 69 N.M. 398, 367 P. 2d 708 and Continental Oil Co. v. Oil Conservation Commission, 70 N.M. 310, 373 P.2d 809, we had clearly indicated in Spencer v. Bliss, 60 N.M. 16, 287 P.2d 221, 228; Application of Brown, 65 N. M. 74, 332 P.2d 475, 479; and Clodfelter v. Reynolds, 68 N.M. 61, 358 P.2d 626, that when called upon to specifically determine the question, the scope of review would be limited. Our prior decisions were reviewed and extensively quoted from in Heine. It would serve no useful purpose to repeat that review here.

"We consider Continental Oil Co. v. Oil Conservation Commission, supra, controlling on the question of scope of review. That decision discussed the constitutional division of powers and after pointing out that grave constitutional problems would be presented if the administrative agency performed a judicial function, it was said:

" ' * * * For the same reason, it must follow that, just as the commission cannot perform a judicial function, neither can the court perform an administrative one. [Citing cases] This is the net effect of the admission and consideration by the trial court of the additional evidence in this case. Such a procedure inevitably leads to the substitution of the court's discretion for that of the expert administrative body. We do not believe that such procedure is valid constitutionally. See, Johnson v. Sanchez, 1960, 67 N.M. 41, 351 P.2d 449, and the cases cited therein. Insofar as § 65–3–22(b), supra, purports to allow the district court, on appeal from the commission, to consider new evidence, to base its decision on the preponderance of the evidence or to modify the orders of the commission, it is void as an unconstitutional delegation of power, contravening art. III, § 1, of the New Mexico Constitution. * * *'

" * * * Even though the state engineer is required, under legislative mandate, to determine facts to which the law, as set forth by the legislature, is to be applied, in so doing he is nevertheless acting in an administrative capacity and such findings are not judicial determinations.

"On authority of Continental Oil Co. v. Oil Conservation Commission, supra, we conclude that § 75–6–1, supra, does not permit the district court, in reviewing a decision of the state engineer, to hear new or additional evidence. The review by the court is limited to questions of law and restricted to whether, based upon the legal evidence produced at the hearing before the state engineer, that officer acted fraudulently, arbitrarily or capriciously; whether his action was substantially supported by the evidence; or, whether the action was within the scope of the state engineer's authority. See, also, Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449. In addition, the statute grants to the court authority to determine whether the action of the state engineer was based upon an error of law. Floeck v. Bureau of Revenue, 44 N.M. 194, 100 P.2d 225, 228; Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769; Johnson v. Sanchez, supra; Ma-King Products Co. v. Blair, 271 U.S. 479, 46 S.Ct. 544, 70 L.Ed. 1046."

Kelley v. Carlsbad Irrigation District, supra, and Continental Oil Co. v. Oil Conservation Comm'n, supra, expressly deal with the scope of review of administrative decisions rather than, as here, the propriety of the judiciary making certain determinations in the first instance, but both cases clearly establish the distinction between administrative and judicial functions.

■ We cannot recognize any difference in the nature of the proceedings where change of point of diversion is sought, as in Kelley v. Carlsbad Irrigation District, supra, under § 75–6–1, supra, and where change of location of a well is sought under § 75–11–7, supra. That which is prohibited by art. III, § 1 of our constitution is exactly what this court said could not be done in Continental Oil Co. v. Oil Conservation Comm'n, supra, and in Kelley v. Carlsbad Irrigation District, supra. We therefore hold that the 1967 amendment to § 75–11–7, supra, violates the separation of powers doctrine of our constitution.

■ We must now consider whether the unconstitutional amendment to § 75–11–7, supra, was validated by the adoption of art. XVI, § 5 of the New Mexico Constitution. The last clause of art. III, § 1, supra, reads: " * * * except as in this Constitution otherwise expressly directed or permitted." This allows the people, by

constitutional amendment in accordance with art. XIX of our constitution, to make certain exceptions to the absolute separation otherwise required by art. III, § 1, supra.

■ At the same session of the legislature which passed the unconstitutional amendment to § 75–11–7, supra, an amendment to our constitution was proposed. This proposed amendment was approved by the people on November 7, 1967, and became art. XVI, § 5 of the New Mexico Constitution. It reads:

> "In any appeal to the district court from the decision, act or refusal to act of any state executive officer or body in matters relating to water rights, the proceeding upon appeal shall be de novo as cases originally docketed in the district court unless otherwise provided by law."

This amendment specifically refers to "appeal" to the district court, whereas § 75–11–7, supra, contemplates an original proceeding in the district court without the requirement of a prior decision, act or refusal to act by the State Engineer. However, even if the constitutional amendment would permit the legislature to pass an act providing for the judicial procedures set forth in § 75–11–7, supra, the timing here involved becomes important.

Both the constitutional amendment and the statutory amendment were passed at the 1967 legislative session. We have noted that the constitutional amendment became effective on November 7, 1967, upon approval by the voters. The statute, however, became effective ninety days after the adjournment of the legislature which enacted it. Article IV, § 23, New Mexico Constitution. See, also, State v. Chavez, 79 N.M. 741, 449 P.2d 343 (Ct.App.1968). The statute was passed during the session which adjourned on March 18, 1967, and became effective ninety days thereafter, which was substantially before the November 7, 1967 effective date of the constitutional amendment. Therefore, the amended § 75–11–7, supra, was purported to be-

come effective before it was constitutionally permissible.

The question then arises whether the later constitutional amendment could validate the statute which was unconstitutional when it purportedly became effective. This issue presents a question of first impression in this jurisdiction and we must look to the decisions of other jurisdictions.

■ It is a well-established rule of constitutional law that an unconstitutional statute is wholly void from the time of its enactment and is not validated by a subsequent constitutional change which would allow the enactment of such a statute. Matthews v. Quinton, 362 P.2d 932 (Alaska 1961); City of Little Rock v. Cavin, 238 Ark. 333, 381 S.W.2d 741 (1964); Jamison v. City of Atlanta, 225 Ga. 51, 165 S.E.2d 647 (1969); Plebst v. Barnwell Drilling Co., 243 La. 874, 148 So.2d 584 (1963); State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S.W.2d 319 (1938). In the case of Banaz v. Smith, 133 Cal. 102, 65 P. 309 (1901), the court, in discussing the fact that an unconstitutional statute was not validated by a subsequent constitutional amendment, said:

> "That would give the amendment the effect of enacting laws instead of merely authorizing the legislature to do so, and it would be to enact a law to which no reference was made, and which the people in adopting the amendment could not have had in mind. Such is not the ordinary function of a constitutional provision, and such effect will not be given to it unless it is expressly so provided. * * *"

This same general rule has been followed consistently. In the recent case of Jamison v. City of Atlanta, supra, it was held:

> "The Act * * * insofar as it attempts such unconstitutional delegation of legislative powers to the City of Atlanta, or to a majority of the landowners of territory to be annexed or to the Superior Court of Fulton County was violative of Art. III, Sec. I Par. I of the

Georgia Constitution (Code Ann. § 2–1301), and void when passed, and being void at that time, no subsequent amendment of the Constitution granting authority to the General Assembly to delegate to a municipality such legislative powers could give it vitality. * * *"

See, also, Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867 (1912); Trustees of Philips Exeter Academy v. Exeter, 90 N.H. 472, 27 A.2d 569 (1940); Annot., 171 A.L.R. 1070; 16 Am.Jur.2d Const.Law § 180; 16 C.J.S. Constitutional Law §§ 43 and 45.

Under certain very limited circumstances, constitutional amendments have been held to validate prior unconstitutional statutes. Where the constitutional amendment expressly or impliedly ratifies or confirms the unconstitutional statute, it has been held to validate the statute, provided that such validation does not impair the obligations of a contract or divest vested rights. Almost all of the cases in this area have involved express ratification. See, Lee v. Superior Court, 191 Cal. 46, 214 P. 972 (1923); Fontenot v. Young, 128 La. 20, 54 So. 408 (1911); Annot., 171 A.L.R., supra. In Matthews v. Quinton, supra, the court said:

"We recognize the legal principle that a constitutional provision, which from the language used shows expressly or by necessary implication that it was intended to operate retrospectively to validate antecedent unconstitutional legislation, renders valid all such legislation to which the constitutional provision relates, without re-enactment by the legislature, unless such attempted validation would impair the obligations of a contract or divest vested rights. The cases we have examined, bearing on the subject, require that the validating constitutional provision must make some reference, however slight or inferential, to the statute intended to be validated. Tested by the principles just stated, section 1 of article XV of the Alaska constitution, in our opinion, does not show by the language used, either directly or by necessary implication, that it was intended to operate retrospectively so as to validate Chapter 39. It follows, therefore, that Chapter 39 remains as void today as it was on the day of its enactment."

In our case, there clearly was no express ratification because the constitutional amendment did not refer to any section or sections of our statutes which were intended to be validated, nor did the statute provide that it was to become effective if and when any subsequently proposed constitutional amendment was approved by the voters.

Few cases even speak in terms of implied ratification, and those bear no similarity to the circumstances of our case. State ex rel. Marr v. Luther, 56 Minn. 156, 57 N.W. 464 (1894); State ex rel. Faust v. Thomas, 313 Mo. 160, 282 S.W. 34 (1926). In each of these cases the language of the constitutional amendment clearly indicates that it was intended to cure statutes known or suspected to be unconstitutional.

 We do not find any attempted implied ratification of the amendment to § 75–11–7, supra, in art. XVI, § 5, supra, the constitutional amendment here in question. Its language is prospective only, and not retrospective. Further, as previously noted, the amendment speaks in terms of "appeal" to the district court from actions of the executive officer, whereas the statute provides for what is in effect an original action in the district court. This distinction reinforces our determination that the amendment did not impliedly ratify § 75–11–7, supra.

 The other exception to the general rule concerns statutes passed specifically in anticipation of a constitutional amendment. Annotation, 171 A.L.R., supra, at 1075, states:

"A legislature has power to enact a statute not authorized by the present constitution where the statute is passed in anticipation of a constitutional amendment authorizing it or provides that it

shall take effect upon the adoption of such a constitutional amendment."

 The · authorities supporting this proposition indicate that statutes passed in anticipation of constitutional amendments never become operative until the amendment is adopted. An examination of these authorities shows that in almost all cases the amendment or the statute, or both, state or clearly imply that they were passed in anticipation of the subsequent amendment. See Druggan v. Anderson, 269 U.S. 36, 46 S.Ct. 14, 70 L.Ed. 151 (1925); Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658 (1926); Fry v. Rosen, 207 Ind. 409, 189 N.E. 375 (1934), appeal dismissed 293 U.S. 526, 55 S.Ct. 143, 79 L.Ed. 636 (1934). Clearly, there is nothing in § 75–11–7, supra, which in any manner indicates that it was passed in anticipation of a subsequent constitutional amendment, or that it was not to become effective until and unless any such constitutional amendment was adopted.

There are two cases which contain some language to the effect that statutes which are unconstitutional when passed may be intended to take effect only subsequently, even in the absence of a showing that the statute was passed in anticipation of a constitutional change. Busch v. Turner, 26 Cal.2d 817, 161 P.2d 456 (1945); Galveston, B. & C. Narrow-Gauge Ry. v. Gross, 47 Tex. 428 (1877). Both of these cases strain unduly to uphold the statutes in question, and we are not persuaded by their reasoning or their result, which if followed could cause prejudice resulting from uncertainty as to when statutes become effective.

 The present controversy involves only the amended portion of § 75–11–7, supra. This section is § 3 of ch. 308 of the New Mexico Laws of 1967. Our reasoning applies equally to all of the amended portion of § 2 of that act (§ 75–11–3, N.M.S.A.1953, Application for use of underground water—Publication of notice—Permit—Hearing.), except that portion relating to obtaining an acknowledged statement from the landowner. It also applies to the proviso contained in § 1 of the same act (§ 75–2–15, N.M.S.A.1953, Hearing required before appeal.). The act does contain a severability clause, so the remainder of the act remains unaffected. The unconstitutional portions were invalid on the effective date of the act and were not ratified or validated by the subsequent adoption of art. XVI, § 5 of the New Mexico Constitution. The district court was, therefore, without jurisdiction to hear this case; the judgment appealed from is void; and the case is dismissed.

It is so ordered.

COMPTON, C. J. and TACKETT, WATSON and McKENNA, JJ., concur.