SESSA v STATE TREASURER

Docket No. 57555. Submitted April 22, 1982, at Detroit.—Decided June 9, 1982.

Michael C. Sessa and several other individuals and the Macomb County Taxpayers Association brought an action against the State Treasurer, Macomb County, and several cities and townships in Macomb County. Plaintiffs sought to enjoin the defendants from complying with § 7a(2) of 1981 PA 6. That statute provided for local units of government to mail "exemption affidavits" to occupants of homesteads to collect information in anticipation of the passage of a constitutional amendment, known as Proposal A, which, among other things, would have limited property taxes on homesteads. The statute also provided that the State Treasurer was to reimburse the local governmental units for the costs of mailing the exemption affidavit forms. The Macomb Circuit Court, Kenneth N. Sanborn, J., found that the exemption affidavit form was unconstitutionally defective in violation of the "purity of elections" clause of the Michigan Constitution because it discussed only the potential property tax reductions under Proposal A and did not mention the proposal's effect on sales taxes. The court also found that the Legislature was not empowered to give immediate effect to the statute in anticipation of passage of the proposed amendment. The trial court permanently enjoined the mailing of exemption affidavit forms until the adoption of Proposal A and the reenactment of the statute. Proposal A was rejected in the May 19, 1981, statewide election. The State Treasurer appealed the trial court's injunctive order. *Held:*

1. The issues raised with respect to the trial court's ruling

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur 2d, Injunctions § 177.
  72 Am Jur 2d, States, Territories, and Dependencies § 115.
[2] 16 Am Jur 2d, Constitutional Law § 38.
  73 Am Jur 2d, Statutes § 41.
[3] 16 Am Jur 2d, Constitutional Law § 117.
[4] 16 Am Jur 2d, Constitutional Law §§ 246, 247.
  73 Am Jur 2d, Statutes §§ 267, 268.

regarding the "purity of elections" clause are moot. The court had the jurisdiction to enjoin the State Treasurer from performing what the court perceived to be an improper act. The court did not find that the statute itself violated the "purity of elections" clause, only the treasurer's manner of implementation, *i.e.*, the mailing of the exemption affidavit forms. There is no constitutional barrier to enforcement of the statutory provision for reimbursement of local units of government for expenses incurred in administration of the statute.

2. There is no constitutional prohibition of the expenditure of state funds for the collection of data such as that sought by use of the exemption affidavit forms. It is not for any court to question the motives of the Legislature in enacting the statute.

Reversed, and the injunctive order prohibiting reimbursement to local units of government is vacated.

1. OFFICERS — COURTS — JURISDICTION.

A circuit court has jurisdiction to enjoin a state officer from performing an improper act.

2. CONSTITUTIONAL LAW — LEGISLATIVE POWERS.

The Legislature has the power to enact a statute not authorized by the constitution where the statute is passed in anticipation of a constitutional amendment authorizing it or provides that it shall take effect upon the adoption of such a constitutional amendment.

3. CONSTITUTIONAL LAW — PLEADING.

A plaintiff who challenges the constitutionality of a statute must identify the specific provision of the constitution which is allegedly violated by the statute.

4. COURTS — CONSTITUTIONAL LAW — STATUTES.

Consideration of whether a statute is wise, politic, just, well-advised or in furtherance of a desirable policy has no place in the determination of the statute's constitutionality; it is not for any court to question the motives of the Legislature.

*S. Lee Elliott & Associates, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for defendant State Treasurer.

Before: Bronson, P.J., and D. F. Walsh and C. W. Simon,* JJ.

D. F. Walsh, J. Defendant State Treasurer of Michigan appeals the May 1, 1981, opinion and order, and the May 4, 1981, injunction issued by the Macomb County Circuit Court.

In its May 4 order the court enjoined the defendants[1] from attempting to comply with § 7a(2) of 1981 PA 6, which had been given immediate effect and signed by the Governor on April 16, 1981. All parties agree that the statute was passed in anticipation of the electorate's May 19, 1981, approval of the constitutional amendment known as Proposal A, which would have amended the constitutional provision limiting the rate of sales taxation imposed on retailers to 4% of their gross taxable sales of tangible personal property. Const 1963, art 9, § 8. Under Proposal A the Legislature was directed to impose additional taxes at a rate of 1.5% on the sale of tangible personal property. The revenue from this additional sales taxation was to be used exclusively for the purpose of reimbursing units of local government for revenues not collectible because of ad valorem property tax exemptions provided for in Article 9, § 3 of Proposal A. Enrolled House Joint Resolution G, March 19, 1981, Article 9, §§ 3 and 8.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The original defendants were the State Treasurer of Michigan, County of Macomb, City of Mount Clemens, Township of Harrison, Township of Clinton, City of Warren, City of Roseville, City of East Detroit, City of St. Clair Shores, City of Armada, City of Centerline, City of Fraser, City of New Baltimore, City of Richmond, City of Romeo, City of Sterling Heights, City of Utica, Township of Shelby, and Township of Lenox. The Cities of Romeo and Armada were dismissed as parties defendant. Added as parties defendant were: Bruce Township, Chesterfield Township, Lake Township, Macomb Township, Ray Township, Richmond Township, Washington Township and Armada Township. Only defendant State Treasurer is involved in this appeal.

Section 7a of 1981 PA 6 was an amendment to 1893 PA 206, the General Property Tax Act. MCL 211.1 *et seq.;* MSA 7.1 *et seq.* Subsection 2 of that section provided:

"Each city and township shall cause to be mailed, on or before May 1, 1981, an exemption affidavit to the occupant of each piece of property within the city or township which is classified as residential or agricultural property and which contains a dwelling suitable for occupancy. Exemption affidavits shall be returned on or before May 22, 1981, to the local official of the city or township who shall be designated on the exemption affidavit. Exemption affidavits shall also be made available at each local unit of government after April 30, 1981. Each city and township may publish individually or jointly on or before May 10, 1981, in a newspaper of general circulation, notice of the availability of the exemption affidavit, that these exemption affidavits must be returned by May 22, 1981, in order to be eligible for the reduction of a 1981 property tax bill if Proposal A at the May 19, 1981, special election is approved, and that, if Proposal A at the May 19, 1981, special election is approved, an eligible owner of a homestead who fails to file an exemption affidavit by May 22, 1981, may submit a claim for a refund of taxes paid that were eligible to be exempted with the state department of treasury. The failure to send or receive the exemption affidavit shall not invalidate an ad valorem property tax levy on the property."

"Exemption affidavit" was defined in § 7a(1)(a):

" 'Exemption affidavit' means the form prescribed by the department of treasury upon which the owner certifies that the property is the homestead of the owner. The information which shall be required on an exemption affidavit shall include the name and address of the owner of the property, an identification of whether the property is an integral part of a larger assessment unit or of a multipurpose or multidwelling

building, the social security numbers of the owner signing the exemption affidavit and each resident in the homestead with an ownership interest, an identification by address or legal description of the property for which the exemption affidavit is filed, and the parcel identification number."

Under subsection 3 of § 7a, the State Treasurer was directed to reimburse local units of government for expenses incurred for exemption affidavits required to be mailed pursuant to subsection 2. It was further provided that subsections 1 and 2 of § 7a were to expire on the date the State Board of Canvassers certified to the Secretary of State that Proposal A had been rejected by the voters at the statewide May 19, 1981, election. 1981 PA 6, § 3.

In their April 28, 1981, complaint, plaintiffs, taxpayers of Macomb County, asked the court to issue a declaratory judgment holding 1981 PA 6 unconstitutional "insofar as it requires implementation and expenditure of public funds prior to approval of the proposed constitutional amendment, known as 'Proposal A', by the electorate". Plaintiffs alleged that $1.05 million had been appropriated by the Legislature pursuant to subsection 3 of § 7a of the statute.[2] According to plaintiffs, "the expenditure of public funds for the implementation of legislation which is unconstitutional at the time of such expenditures is patently an improper and unconstitutional use of public funds". Plaintiffs further alleged that the mailing of the "homestead exemption affidavit" prepared by the State Treasurer pursuant to § 7a(2) unfairly promoted Proposal A by virtue of its failure to mention the increased sales taxation which would have been mandated by voter approval of the

[2] Defendant State Treasurer has admitted this appropriation.

proposal. Plaintiffs asked the court to restrain defendants from implementing 1981 PA 6 prior to voter approval of Proposal A.

At the top of the "homestead exemption affidavit" prepared by the State Treasurer was the following direction:

"RETURN THIS FORM IMMEDIATELY. This form has been sent to you now because your local government needs to determine which properties qualify for tax reduction if Proposal A passes. Early information will allow reductions to be made in tax bills and escrow accounts as soon as possible."

On the reverse side of the affidavit the following explanatory statements appeared:

"This form is an official document. It is important that you read it. If property tax reduction Proposal A is adopted by Michigan voters on May 19, 1981, this form will enable qualified homeowners to receive a reduction in their 1981 property taxes and escrow accounts. This form has been sent to you now so the reduction can be made immediately should Proposal A be adopted.

*     *     *

"Return the completed form to the address given on the face of the form. Do not wait until after the May 19 election to return this form. If Proposal A does not pass, the local governmental unit will disregard this form.

"This form is due May 22, 1981. If you do not return this form by May 22, your tax reduction will not appear on your 1981 tax bill. You will be required to pay your tax in full and claim a refund of the reduction amount from the State.".

On April 28, 1981, the circuit court ordered defendants to show cause why the requested preliminary order of injunction should not be issued. On May 1, 1981, the day after the show cause

hearing, the court ruled that the homestead exemption affidavit violated the "purity of elections" clause of the Michigan Constitution, which vests the Legislature with constitutional authority to enact election laws. Const 1963, art 2, § 4. See *Socialist Workers Party v Secretary of State,* 412 Mich 571, 595-600; 317 NW2d 1 (1982), *Wells v Kent County Board of Election Comm'rs,* 382 Mich 112; 168 NW2d 222 (1969). The court found that the affidavit was unconstitutionally defective in that it discussed only the potential property tax reductions under Proposal A and made no mention of the proposal's sales tax increase implications. "Given the public antipathy toward tax increases and the public ardor in favor of tax reductions", the court found that "the information on the exemption affidavit [could] only be construed to extol the virtues of Proposal A, while simultaneously concealing its less desirable features". This, the court concluded, was a clear violation of the "purity of elections" concept.

The court further ruled that § 7a(2) of the statute was unconstitutional in that "[t]he Legislature cannot pass acts declared to be presently effective when their very existence turns upon a constitutional proposal not yet passed". The court noted that a statute passed in anticipation of a constitutional amendment does not become operative until the amendment is adopted, since "[u]ntil amended, the provisions of the Constitution bind not only the Legislature but its acts and the people themselves".

Declaring that § 7a(2) had been unconstitutional from its inception, the court permanently enjoined any future mailing of exemption affidavits until the adoption of Proposal A and the reenactment of the statute by the Legislature.

Proposal A was rejected by the voters at the May 19, 1981, statewide election. On May 27, 1981, the Board of Canvassers certified to the Secretary of State that Proposal A had been rejected.

Of the several defendants only the State Treasurer has appealed the circuit court's May 4, 1981, injunctive order.

With respect to the trial court's ruling that defendant State Treasurer's manner of implementation of § 7a(2) constituted unconstitutional meddling with elections in violation of the "purity of elections" clause, the issues raised are moot. Plaintiffs do not claim that the statute itself violated the "purity of elections" concept. Plaintiffs' sole challenge was to the nature of the State Treasurer's attempt to carry out the statute. The court had jurisdiction to issue an injunctive order to restrain the State Treasurer from performing what the court determined to be an improper act. *Racing Comm'r v Wayne Circuit Judge,* 377 Mich 31, 36; 138 NW2d 764 (1966), *Michigan Salt Works v Baird,* 173 Mich 655, 662; 139 NW 1030 (1913). Plaintiffs obtained the requested relief. In ruling that the State Treasurer's execution of his statutorily delegated duties was unconstitutional, the court did not find that the statute itself violated the "purity of elections" clause. As to this aspect of plaintiffs' claim, therefore, we find no constitutional barrier to enforcement of the statutory provision concerning reimbursement of units of local government for expenses incurred in the administration of the statute.[3]

---

[3] Clearly, considerations of justice and practicality compel this conclusion. The units of local government justifiably relied on the action of the State Treasurer. While we express no opinion as to the constitutional validity of the treasurer's conduct, we hold that even if that conduct were unconstitutional the reimbursement provisions of § 7a would not necessarily be rendered unenforceable thereby with respect to local action taken before the circuit court's ruling. See

With respect to the court's further ruling that the statute itself was unconstitutional, on grounds independent of the "purity of elections" concept, however, the issues are not moot. In terms of its practical impact, this Court's review is imperative to determine whether local governments can be reimbursed for moneys expended by them in their administration of 1981 PA 6, § 7a. It is not disputed that units of local government incurred considerable expense in the administration of the statute before issuance of the injunctive order.

The circuit court ruled that the statute was unconstitutional as violative of the principles recognized by the Michigan Supreme Court in *City of Gaylord v Gaylord City Clerk,* 378 Mich 273; 144 NW2d 460 (1966), where Chief Justice KAVANAGH, joined by three other justices, observed that:

> "A legislature has power to enact a statute not authorized by the present Constitution where the statute is passed in anticipation of a constitutional amendment authorizing it or provides that it shall take effect upon the adoption of such a constitutional amendment." *Id.,* 323 (concurring opinion of T. M. KAVANAGH, C.J.).

Also cited in support of the court's ruling in this case was *Fellows v Shultz,* 81 NM 496; 469 P2d 141 (1970), where the New Mexico court recognized the above proposition and went on to note that "statutes passed in anticipation of constitutional amendments never become operative until the amendment is adopted". *Id.,* 503; 469 P2d 148.

The constitutional infirmity found by the circuit court in this case was that 1981 PA 6 was given immediate effect;[4] *i.e.,* the Legislature determined

*Stanton v Lloyd Hammond Produce Farms,* 400 Mich 135, 147; 253 NW2d 114 (1977).

[4] Const 1963, art 4, § 27.

that the statute was to be effective before adoption of the constitutional amendment in anticipation of which the statute was passed. This, according to the court, was "to put the legislative cart before the constitutional horse", and rendered 1981 PA 6, § 7a(2) void *ab initio.* We respectfully disagree with the learned circuit court's ruling.

Fundamental to our consideration of the issues raised is recognition that the state's legislative power "is as broad, comprehensive, absolute and unlimited as that of the parliament of England, subject only to the Constitution of the United States and the restraints and limitations imposed by the people upon such power by the Constitution of the State itself". *Young v City of Ann Arbor,* 267 Mich 241, 243; 255 NW 579 (1934). It was incumbent on plaintiffs to point out the specific provision of Michigan's Constitution which was allegedly violated by 1981 PA 6. *Stockler v Dep't of Treasury,* 75 Mich App 640, 644; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977), *app dis* 435 US 963; 98 S Ct 1598; 56 L Ed 2d 54 (1978); *C F Smith Co v Fitzgerald,* 270 Mich 659, 667; 259 NW 352 (1935), *app dis sub nom C F Smith Co v Atwood,* 296 US 659; 56 S Ct 115; 80 L Ed 470 (1935).

We have been directed to no provision of Michigan's Constitution which forbids the Legislature's gathering of the information which was called for in the "homestead exemption affidavit". Nothing in the constitution prohibits the expenditure of state funds for the collection of such data. Consideration of whether the statute was wise, just, politic, well-advised or in furtherance of a desirable policy has no place in the determination of the statute's constitutionality. *Young v City of Ann Arbor, supra,* 243; *C F Smith Co v Fitzgerald, supra,* 671; *Wickham v Carlton Twp School Dist.*

*No 2,* 325 Mich 94, 98; 37 NW2d 770 (1949). It is not for any court to question the motives of the Legislature. *C F Smith Co v Fitzgerald, supra,* 671; *Boyd v Employment Security Comm,* 3 Mich App 198, 203; 142 NW2d 11 (1966).

Finding no constitutional provision prohibiting the actions authorized by 1981 PA 6, § 7a(2), we reverse the trial court's ruling that the statute was unconstitutional. Because of the absence of specific constitutional infirmity, the *City of Gaylord, supra,* and *Fellows, supra,* cases are inapposite. Insofar as the injunctive order prohibited the state's reimbursement of units of local government for expenses incurred in the administration of the statute, the order is vacated.

No costs, a public question being involved.